ALFRED G. PECKHAM *et al.*

*v.*

BENJAMIN F. HADDOCK *et al.*

1. REVIVOR OF MORTGAGE — *by what character of instrument.* An instrument under seal is required to create a mortgage conveying the legal title ; and after such a mortgage is, in contemplation of law, discharged, it would seem to be necessary to observe the same formalities in reviving it, as were requisite to give it validity in the first instance.

2. EQUITABLE MORTGAGE — *how created.* But although an instrument may not operate as a revival of a mortgage, at law, it does not follow that it should not operate as an agreement to charge the lands as an equitable mortgage.

3. CONSTRUCTION OF CONTRACTS— *where the mode sought by the parties cannot be made effectual.* While courts cannot give effect to an instrument so as to do violence to the rules of language, or to the rules of law, they are to give it such a construction as will bring it as near to the actual meaning of the parties, as the words which they have seen fit to employ, and the rules of law, will permit.

4. It not unfrequently happens that instruments cannot have the effect intended by the parties, and effect is given to them in another way consistently with such intention. The rule in regard to the construction of deeds is, "that they shall operate according to the intention of the parties, if by law they may ; and if they cannot operate in one form, they shall operate in that which by law shall effectuate the intention." And the same rule has been frequently applied in giving effect to other instruments.

5. EQUITABLE MORTGAGE— *construction of an agreement.* In this case, Hickox gave his three promissory notes to Haddock, payable, one, two and three years from date, which he secured by mortgage upon land. Speer acquired the equity of redemption, and paid the first note to Haddock, who receipted the payment upon the note and delivered it to Speer. Speer then applied to one Thompson for a loan of money, and by an agreement between Speer, Haddock and Thompson, the payment upon the note was erased and it was indorsed to Thompson An agreement was written upon the back of the note as follows :

"Received of Archibald Thompson, as purchaser and assignee, the full amount of the within note and interest from date (the interest to the 10th of May on the other two notes being paid by I. Speer, as above), and in consideration of said purchase payment, I hereby sell, assign and transfer the within note to said Thompson, with all interest accrued, or to accrue, including the incident security by trust deed, or mortgage, of Hickox the maker. But it is understood that said Thompson is not to proceed thereon until I shall have had time and opportunity to collect my said two next notes included in same security by deed of mortgage. It being understood that I. Speer, assignee of Hickox (who also undersigns) is to have three years from date to pay this note by his allowing or paying ten per cent. interest on the advance purchase-money (amount on the 10th of May last, $6,655 — $1\frac{1}{4}$ months more to the 25th of June, is $46.87 — $6,671.87) so advanced in purchase of this note by said Thompson. Chicago, June 24th, 1856.        BENJAMIN F. HADDOCK."

"And the said Speer hereby agrees to pay the within note and interest accrued, besides ten per cent. hereafter as above. Chicago, June 24, 1856.

ISAAC SPEER."

The note was then delivered to Thompson, and the loan was consummated. *Held,* that the language employed, when read in the light of surrounding circumstances, clearly expresses an intention to charge the land with the payment of the money — the parties intended to create a lien. And while the agreement may not operate in the way intended, as a revival of the mortgage, effect may

be given to the intention of the parties by another mode, in declaring it an equitable mortgage.

6. CONSTRUCTION OF CONTRACTS, *where they admit of more than one construction.* If a contract admits of more than one construction, one of which will render it inefficacious, or nullify it, that construction should be adopted which will carry it into effect.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

On the 29th day of November, 1862, Alfred G. Peckham, Dennis M. Fitch and Archibald Thompson exhibited their bill in chancery, in the court below, against Benjamin F. Haddock, Isaac Speer, Thomas Speer and Buckner S. Morris.

It is alleged in the bill that on the 10th day of May, 1855, the defendant Haddock, being the owner in fee of a certain, specified portion of lot number one in block forty-one, in the original town of Chicago, sold and conveyed the same by deed to one Benjamin F. Hickox, for the sum of twenty-five thousand dollars, of which Hickox paid to Haddock the sum of six thousand two hundred and fifty dollars, cash in hand, and for the residue thereof, Hickox made and delivered to Haddock his three promissory notes, for the sum of $6,250 each, with interest, payable one, two and three years after their date respectively; and to secure the payment of these notes Hickox executed to Haddock a mortgage upon the said premises.

That afterwards, all the estate of Hickox, the mortgagor, in the premises, became vested in Isaac Speer, subject to the mortgage, which Speer assumed to pay.

It is further alleged, that subsequently, on the 7th of June, 1856, Isaac Speer paid to Haddock the amount of the note which became due one year after its date, a receipt for which was indorsed by Haddock thereon, and it was then delivered up to Speer.

On or about the 24th of June, 1856, Spear applied to the complainant, Thompson, for a loan of money, and as security for the payment thereof, offered to Thompson a lien upon the said mortgaged premises, and agreed with Thompson that he and Haddock would give him such lien.

It is alleged in the bill, that in pursuance of that agreement, Thompson loaned to Speer the sum of $6,671.87, for a term of three years, upon interest at the rate of ten per cent. per annum, upon security given by Speer and Haddock in the following manner:

That Haddock, being then still the holder of the said two promissory notes which remained unpaid, and of the said mortgage; and Speer then and there having in his possession the said promissory note which he had paid as aforesaid, the indorsement of payment thereof, thereon, was so changed by or under the direction of the said Speer and Haddock, or one of them, with the consent and approbation of the other of them, as to show only a payment of the interest on the other two of said promissory notes up to the 10th day of May, A. D. 1856, as aforesaid; and then a further indorsement was by them, the said Speer and Haddock, or under their direction, or of one of them, made upon the same note, below such receipt of payment of interest, and signed by the said Speer and Haddock, in the words and figures following, that is to say:

" Received of Arch'd Thompson, as purchaser and assignee, the full amount of the within note, and interest from date, (the interest to 10th May on the other two notes being paid by I. Speer as above,) and in consideration of said purchase payment, I hereby sell, assign and transfer the within note to said Thompson, with all interest accrued or to accrue, including the incident security, by trust deed or mortgage, of Hickox, the maker. But it is understood that said Thompson is not to proceed thereon until I shall have had time and opportunity to collect my said two next notes included in same security by deed or mortgage. It being understood that I. Speer, assignee of Hickox (who also undersigns), is to have three years from date to pay this note, by his allowing or paying ten per cent. interest on the advance purchase-money, (amount on 10th May last, $6,625; one and a half months more to 25th June, is $46.87, $6,671.87), so advanced in purchase of this note by said Thompson. Chicago, June 24th, 1856.

(Signed)          BENJ. F. HADDOCK."

3 — 36 Ill.

" And said Speer hereby agrees to pay the within note, and interest accrued, besides ten per cent. hereafter, as above. Chicago, June 24th, 1856. (Signed) ISAAC SPEER."

It is averred that Speer and Haddock then delivered the same note, with said indorsement thereon, to Thompson as security for the payment of the loan from Thompson to Speer, and agreed with Thompson that the same should be a lien and charge upon the said mortgaged premises, and that said premises should be charged with the payment of the money so loaned, notwithstanding the fact that the said note had been once paid by Speer, which fact, it was agreed between Speer, Haddock and Thompson, should be, so far as their own rights and interests were concerned, considered as never having happened.

On the 30th of May, 1857, Thompson assigned the note thus received by him, and all benefit of the security therefor, to the complainant, Fitch. And subsequently, Fitch transferred the same to the complainant, Peckham.

The bill alleges, that the other two notes secured by the mortgage have been paid, but that the money loaned by Thompson to Speer remains wholly unpaid.

They aver, that it was the intention and purpose of Speer and Haddock, in the transaction mentioned, to give Thompson a lien upon said premises, subject to the terms of the indorsement upon the note, as security for the repayment of the money loaned by Thompson to Speer; and that Thompson took the note and indorsement with the intention of thereby obtaining such lien; and that neither Thompson, nor Haddock, nor Speer, had any intention to revive, or attempt to revive the note as a personal liability against Hickox, or in any way to affect him or his interests therewith, and that all the parties to this suit, connected with that transaction, acted upon the belief that Thompson had acquired such lien and security.

It is alleged, that about the 13th of October, 1857, Isaac Speer failed in business, and has ever since been insolvent.

The complainants state, that Haddock claims some interest in the premises other than that he claimed under the mort-

gage, but charge that he acquired such interest after Thompson's rights accrued, and subject thereto — and the same allegation is made in reference to an interest claimed by the defendants, Thomas Speer and Buckner S. Morris.

The prayer of the bill is, that an account be taken of the amount due to the complainant Peckham on account of the loan from Thompson to Isaac Speer, and that Speer be decreed to pay the amount so found due ; and that Peckham be decreed to have a lien upon said premises, prior to all liens or claims of any of said defendants thereon ; and that the premises, and all the right, title and interest therein, of the defendants, may, in case of default of payment, be sold in satisfaction of the amount found due to the complainant, Peckham, upon the taking of the account ; and for general relief.

The defendants demurred to the bill, and as ground of demurrer, alleged that the complainants had not made such a case upon the face of their bill as to entitle them to any relief — and further, that there was a want of proper parties.

The Circuit Court sustained the demurrer, and dismissed the bill for want of equity.

The complainants thereupon sued out this writ of error.

The principal questions presented in the case, are, whether the mortgage was revived as regards the note which had been paid by Isaac Speer, and afterwards transferred to Thompson ; and if not, whether an equitable mortgage was created by the transaction between Thompson, Speer and Haddock.

Messrs. BARKER & TULEY, for the Plaintiffs in Error.

Messrs. WAITE & TOWNE, and Mr. JESSE B. THOMAS, for the Defendants in Error.

Mr. JUSTICE BECKWITH delivered the opinion of the Court:

This is a suit in equity to enforce an equitable mortgage. The bill alleges, that one Hickox made three promissory notes for the sum of six thousand two hundred and fifty dollars each, payable to Haddock or order, with interest, in one, two

and three years after date, respectively, and executed a mortgage of certain premises in Chicago to secure the payment of the same. That afterwards the equity of redemption in the premises came to and was vested in Isaac Speer, under whom the other defendants, after the making of the alleged equitable mortgage, derived their title, with notice. Soon after the note payable in one year from date arrived at maturity, Isaac Speer paid the same, and took it up, Haddock receipting its payment on the back thereof.

Speer then applied to Thompson, under whom the other complainants claim, for a loan of money; and by an agreement between Speer, Haddock and Thompson, the receipt of payment upon the note was erased, and it was indorsed to Thompson. An agreement was written upon the back of the note, which was signed by Speer and Haddock, as follows, viz:

"Received of Arch'd Thompson, as purchaser and assignee, the full amount of the within note, and interest from date, (the interest to 10th May on the other two notes being paid by I. Speer as above,) and in consideration of such purchase payment, I hereby sell, assign and transfer the within note to said Thompson, with all interest accrued or to accrue, including the incident security, by trust deed, or mortgage, of Hickox, the maker. But it is understood that said Thompson is not to proceed thereon until I shall have had time and opportunity to collect my said two next notes included in same security by deed or mortgage. It being understood that I. Speer, assignee of Hickox (who also undersigns,) is to have three years from date to pay this note, by his allowing or paying ten per cent. interest on the advance purchase-money, (amount on 10th May last, $6,625; one and a half months more to 25th June, is $46.87, $6.671.87), so advanced in purchase of this note by said Thompson. Chicago, June 24th, 1856.

BENJ'N F. HADDOCK.'

" And said Speer hereby agrees to pay the within note, and interest accrued, besides ten per cent. hereafter as above. Chicago, June 24th, 1856.                ISAAC SPEER."

It was insisted in argument that the payment of the note

discharged the mortgage; and that it could not be revived, without the assent of Hickox, the mortgagor, nor by an instrument having none of the formalities necessary to create a legal mortgage.

An instrument under seal is required to create a mortgage conveying the legal title ; and after such a mortgage is in contemplation of law discharged, it would seem to be necessary to observe the same formalities in reviving it, as were requisite to give it validity in the first instance; but although an instrument may not operate as a revival of a mortgage at law, it does not follow that it should not operate as an agreement to charge the lands as an equitable mortgage. While we cannot give effect to an instrument so as to do violence to the rules of language, or to the rules of law, we are to give to it such a construction as will bring it as near to the actual meaning of the parties, as the words which they saw fit to employ, and the rules of law, will permit.

It not unfrequently happens that instruments cannot have the effect intended by the parties, and effect is given to them in another way consistently with such intention.

In *Gibson* v. *Minet,* 1 H. Bl. 569, Lord Chief Baron EYRE said, "a deed of feoffment upon consideration, without livery, may enure as a covenant to stand seized to the use of the intended feoffee. A feoffment without livery, operates nothing as a feoffment — is in truth no feoffment, but is a deed, which may operate as a covenant to stand seized to uses. The seizin remains in the feoffor, because the deed is insufficient to pass it; but the land is bound by the use ; " and the reason the learned Baron gives for this conclusion is, that "it is the effect of the feoffor's own agreement, plainly expressed upon the face of his deed — it is a construction put upon the words of his deed, which his words will bear."

In Shep. Touch., vol. 2, p. 82 (Preston's edition), it is said, "a deed that is intended and made to one purpose may enure to another; for, if it will not take effect in the way it was intended, it may take effect another way, provided it may have that effect, consistently with the intention of the parties."

In *Goodtitle d. Edwards* v. *Bailey*, Cowp. 597, Lord MANS-
FIELD said, "the rules laid down in respect to the construction
of deeds are founded in law, reason, and common sense; that
they shall operate according to the intention of the parties, if
by law they may; and if they cannot operate in one form,
they shall operate in that which by law shall effectuate the
intention."

In *Sanders* v. *Saville*, 3 Lev. 372, it was held, "where a
man who was seized in fee of a rent, granted it by deed to one
who was his kinsman, and there was an attornment to the
grantee, but it was made by a person who was not the real
tenant of the land and therefore void, though the intent ap-
peared that the deed should operate as a grant at common law
with an attornment, yet since it could not pass that way, it was
adjudged that the grant should operate as a covenant to stand
seized."

In *Roe* v. *Franmar*, 2 Wils. 75, it was unanimously resolved
that, though a deed of release could not operate as such be-
cause it granted a freehold in future, which could not by law
be done, yet the deed should operate as a covenant to stand
seized to the use of the releasee. The same rule has been fre-
quently applied in giving effect to other instruments. 2 Pars.
on Cont. 15; *Brown* v. *Slater*, 16 Conn. 192.

In the case under consideration, although the agreement may
not operate as a revivor of the mortgage at law, it may have
effect as an agreement to charge the land consistently with the
intention of the parties, if it contains all the essential elements
of such an agreement. Speer received from Thompson
$6,671.87, and agreed in writing to repay the same in three
years with interest at ten per cent. The words of the under-
taking are to pay the note and interest accrued, with ten per
cent. interest thereafter, as before stated in the agreement.

The language has the same meaning as an undertaking in
words to pay the sum of money specified in the note and interest
accrued, amounting to $6,671.87, with ten per cent. interest
thereon. The only question to be considered is, whether Speer
made an agreement to charge the lands with the payment of the

debt. The agreement was in writing and signed by the parties to be charged thereby. No question as to its validity arises under the statute of frauds.

The parties were competent to contract, and there was a valuable consideration. The minds of the parties assented to the writing signed by them; and we have only to consider, whether it contains apt words expressive of an intention to charge the lands with the payment of the debt. No particular form of words was necessary for this purpose; but any words showing that the parties assented that the lands should be so holden, will be sufficient.

Haddock held a mortgage which purported to secure the note, and both parties agreed that so much of the mortgage as purported to secure that note, should be transferred to and held by Thompson, as security for the money advanced by him; and it is fairly inferable from the agreement that Thompson was to be at liberty, after a limited time, to proceed upon the mortgage to enforce the payment of his money.

It was urged in argument, that so much of the mortgage as was transferred, was a mere shadow having no vitality; and that Thompson was only to proceed upon such a shadow to enforce payment of the money advanced by him. If this were true, still, after Thompson had advanced his money, upon Haddock and Speer's agreement that he might collect it by means of a shadow, they have no just right to say that he shall not do so. The material inquiry, however, is, what did the parties themselves intend?

The surrounding circumstances render it evident that they intended to give Thompson a security upon the land; and the language employed by them, should be construed — if it consistently can be — so as to effectuate that intention.

If a contract admits of more than one construction, one of which will render it inefficacious, or nullify it, that construction should be adopted which will carry it into effect; or, as was said by Lord MANSFIELD in *Pugh* v. *Leeds*, Cowp. 714, "the parties necessarily understood and used the language in that sense which made their deed effectual."

In the case under consideration, we understand that the parties agreed that so much of the mortgage as purported to secure the note in question, should be effectually transferred to Thompson, and held by him as a valid security.

The agreement that Thompson should be at liberty, after a limited time, to proceed upon the mortgage to enforce the payment of his money, must be construed as an agreement that he might proceed thereon, as upon a valid mortgage. The instrument was one having all the forms of a mortgage; and the agreement of the parties must be construed as one, stipulating that it might be proceeded upon as a mortgage, for the purpose of collecting the money advanced by Thompson.

We think the language employed, when read in the light of surrounding circumstances, clearly expresses an intention to charge the land with the payment of the money.

There is no question as to the intention of the parties to revive the mortgage; and such an intention necessarily includes an assent, that the lands should be holden for the payment of the money to be secured by such revival. The agreement may not be operative in the way in which the parties intended that it should operate; but it expresses their intention so that we can give effect to it in another way consistently with the rules of law.

Our attention was called to the case of *Hunt* v. *Rousmanniere's Ads.*, 1 Pet. 1, and it was insisted that the case under consideration came within the rule there laid down.

We think otherwise. In that case a creditor had taken an instrument perfect in all its parts, and allowing no room for construction as to its effect or meaning, the legal effect of which was misunderstood. There, the parties intended to make an instrument creating a lien, but failed so to do because the instrument did not contain apt words to express their intention. The language employed was clear and unambiguous, and expressed an intention to give to the creditor an irrevocable power of attorney; and no construction of the language could make it express an intention to give a lien although the parties intended to create one, and supposed that such was the legal effect of the

instrument. In the case under consideration, the parties not only *intended* to create a lien, but the instrument does contain words, when properly construed, expressive of their intention. The difference between the two cases is, that in reading the language of the two instruments by the light of surrounding circumstances, in the one there is an intention expressed to charge the property, and in the other there was none.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*