ISAAC WILLETTS AND OTHERS, APPELLANTS, *v.* RUFUS M. BROWN AND OTHERS, RESPONDENTS.

*Lien on personal property — what agreement to give security will be enforced by courts of equity — who should be made defendants in an action to foreclose it.*

The plaintiffs, who were the owners of and had the right to operate and mine for oil on certain premises and to receive as a royalty the one-eighth of the oil produced on another parcel, after entering into possession of the first-named parcel and digging five oil wells thereon, which produced a considerable quantity of oil, entered into an agreement, under seal, by which they sold and transferred all their interest in the said property, and in the machinery, apparatus and the royalty before mentioned, to the defendant Kervin, who agreed to pay therefor the sum of $32,000. Thereafter Kervin entered into possession of the premises and operated the wells, but neglected to pay the amount due to the plaintiffs. The contract contained a provision, immediately following Kervin's promise to pay the purchase-price, that "all rigs, tanks, boilers, engines, tubing and casing now upon said land, or hereafter put upon the same, shall remain upon the same, as part and parcel of the said premises, until all payments shall be made and completed herein;" and, also, the following provision: "It is further agreed, by and between the parties hereto, that in case of failure on the part of said Kervin to make the payments herein at the time they shall, respectively, fall due for the period of ten days, then, after such failure to meet such payment, all oil produced upon the said premises

shall thereafter be run into the lines to the credit of Isaac Willett (one of the plaintiffs) as a security for such payment."

*Held*, that as the vendors were owners of the fee of the lands, their interest in the wells, and all the machinery used in operating the same, must be regarded as personal property, as between the parties to this action, by force of chapter 372 of 1883.

That the plaintiffs had an equitable lien upon the property and the oil produced until the entire purchase-price was paid.

That, notwithstanding the omission from the agreement of any provision prescribing the form and manner in which the security was to be given, and regarding the contract as a mere executory promise to give a lien, such a promise would be regarded by courts of equity as creating an equitable lien which would be enforced, as against the party promising to give the lien and those who claimed under him, who were not innocent purchasers.

That the fact that the defendant Kervin had abandoned the premises, and that the plaintiffs had regained possession of the same and were engaged in operating the wells and receiving the product of oil and the avails thereof, did not prevent them from instituting this action to foreclose their lien, but furnished an additional reason for them to do so, as it would enable them to render an account whereby the amount of the unpaid purchase-money might be determined.

That one to whom the defendant Kervin had made a general assignment for the benefit of his creditors, and other persons claiming some interest in the property subsequent and subordinate to the lien of the plaintiff, were properly made parties defendant.

APPEAL from a judgment, entered in Allegany county, after a trial had before referee, dismissing the plaintiffs' complaint as to the defendants Rufus M. Brown, Robert M. Wall, Charles H. Levins and Samuel N. Reid, who are the respondents.

These defendants and Thomas Kervin appeared and answered, denying many of the material facts upon which the plaintiffs' cause of action is based, and setting up matters in defense, which, if true, would defeat a recovery as to all the defendants. The issues were all referred to a referee to hear and take proofs of the allegations in the complaint and to compute the amount due and owing on the contract described in the plaintiffs' complaint, and to report the same to the court. No case was made setting forth the proceedings on the hearing before the referee, but he states, in his report, that on motion of the counsel for all the defendants who answered, except Thomas Kervin, the plaintiffs' complaint was dismissed as to such defendants and each of them, on the ground that the same did not state facts sufficient to constitute a cause of action

against such defendants or either of them, with costs, which were taxed and entered in the judgment at $143.77. No trial was had on issues between the plaintiffs and the defendant Kervin, and they remain untried. The case was submitted on printed brief.

*Hamilton Ward*, for the appellants.

*A. L. Elliott*, for the respondents.

BARKER, J.:

As the complaint was dismissed on the defendants' motion before any proofs were offered or any statement made of the facts which the plaintiffs intended to prove in support of his cause of action, it must be determined by the allegations contained in the complaint whether the same was properly dismissed, for it is to be presumed that the plaintiffs could sustain, by competent evidence, the facts therein set forth. A perfect cause of action was stated against the defendant Kervin, entitling the plaintiffs to the recovery of a personal judgment against him, for a large sum of money and for the other relief which was demanded in the complaint. The complaint states, in substance, that the plaintiffs, Isaac Willetts and William Cranston, were the owners of and had the right to operate and mine for oil, on certain premises which are specifically described, and as to another parcel they were entitled to one-eighth of the oil which might be produced thereon by other parties as a royalty to be paid to them. They were in possession of the first named parcel, and had drilled five oil wells thereon, which were productive, and which had produced a considerable quantity of oil. There was connected therewith, and used in developing the property, engines, derricks, pumps, drills and tanks for storing oil, such as are commonly used in that business. By an instrument, under seal, which is set forth in the complaint, the plaintiffs sold and transferred all their interest in the said property, together with the said machinery and apparatus, and in the royalty, before mentioned, to the defendant, Thomas Kervin, who agreed to pay therefor $32,000, and the complaint alleges that at the time of the commencement of the action there was due and unpaid on said contract $7,000. It is also alleged that Kervin entered into the possession of the premises, operated the wells and produced a large

quantity of oil. It is also averred that the other plaintiff, Leonard Willets, acquired an interest by purchase in the contract of bargain and sale prior to the commencement of this action. The plaintiffs also claim that by virtue of the contract they have a lien upon all the property which was the subject of the sale and the oil which has been produced, or which may be produced, as a security for the unpaid purchase-money, and seek in this action to enforce such lien, and for a personal judgment against Kervin for any deficiency that may exist after a sale. In the contract immediately following Kervin's promise to pay the purchase-price, there is a provision that, " all rigs, tanks, boilers, engines, tubing and casing now upon said land, or hereafter put upon the same, shall remain upon the same, as part and parcel of the said premises, until all payments shall be made and completed herein," and the concluding paragraph of the agreement is as follows : " It is further agreed, by and between the parties hereto, that in case of failure on the part of said Kervin to make the payments herein at the time they shall respectively fall due, for the period of ten days, then after such failure to meet such payment, all oil produced upon the said premises shall thereafter be run into the lines to the credit of Isaac Willets, as a security for such payments." At the time of the sale there was some oil in store in the tanks on the premises, and the contract also contains this clause : " All the oil produced upon the above premises shall be the property of the said Kervin, or if any be sold the avails thereof shall belong to him." It is manifest, when taken in connection with the averments of the complaint, that the last-mentioned term of the contract, just quoted, was intended to be a sale of the oil in store at the time of the making of the agreement. We are inclined to the opinion, and in disposing of this appeal we shall view the contract as a sale *in presenti*, and vesting the title of all the property in the vendee.

The respondents' position is, that as against Kervin the plaintiffs had no lien upon the property, and could only recover a personal judgment against him, and for that reason they were unnecessary parties, and there could be no advantage secured to the plaintiffs by retaining them as parties defendant to the action, pending the trial of the issues between them and Kervin. In our consideration of this question we have reached the contrary conclusion, and think

that the plaintiffs have an equitable lien upon the property and the oil produced until the entire purchase-price is paid. As the vendors were the owners of the fee of the land, their interest in the wells, and all the machinery used in operating the same, must be regarded as personal property, as between the parties to this action, by force of chapter 372 of the Laws of 1883, which provides: " All oil wells and all fixtures connected therewith, situate on lands leased for oil purposes, and oil interests and rights held under and by virtue of any lease, or contract, or other right or license to operate for or produce petroleum oil, shall be deemed personal property, for all purposes except taxation."

As to a lien arising from the express contract of the parties, the general rule, as stated by one of the elementary writers, is : " That every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees and purchasers or incumbrancers with notice." (3 Pomeroy's Eq. Juris., § 1235.)

The promise of the vendee was to give a security upon the oil produced, and the form and manner in which the same was to be perfected, so as to give the vendor some written evidence of their lien, was not provided for in the agreement. But, notwithstanding this omission, and regarding the contract as a mere executory promise to give a lien, courts of equity regard such a promise as creating an equitable lien which will be enforced as against the party promising to give the lien and those who claim under him who are not innocent purchasers. (Pomeroy's Eq. Jurisprudence, 373, § 1237.)

In this State the general rule, as stated, has been applied in particular cases so as to carry out and consummate, in an effective manner, the real intention of the parties, as stipulated in their agreement.

In *Husted* v. *Ingraham* (75 N. Y., 251) the plaintiff sold and delivered a quantity of carpeting to their vendees, which were put

down in their hotel, with the understanding that the purchasers should secure the purchase-price to the vendors by a chattel mortgage. The purchasers' notes were received without exacting a chattel mortgage upon the carpets, and, thereafter, a receiver was appointed of the property of the purchasers, and he claimed a title to the carpets. In commenting upon the rights of the parties, the court said: " The carpets having been delivered under an agreement that the price should be secured by a mortgage thereon, that agreement could have been specifically enforced in equity and constituted an equitable lien upon the property as against J. E. Miller & Co. (the purchaser), and all persons claiming through or under them, except *bona fide* purchasers having no notice of the lien."

In *Hale* v. *Omaha National Bank* (49 N. Y., 626), the lessees of a hotel property agreed, in writing, in one of the clauses of the lease, to give their vendors a lien to secure the payment of rent, upon all the furniture which they should place in the hotel. The defendant seized the property and converted the same to his own use without any claim or color of title. The court, in holding that the plaintiff had an equitable lien upon the property, said that the parties evidently contemplated some further and other act or deed, to complete and perfect the security, but, notwithstanding the failure to do so, the lessors had a right, as soon as the lessees placed the furniture in the hotel, and they could have required of them security in proper form upon the property, and had they refused, upon request, to give the lien agreed upon, a specific performance would have been decreed, and the court would have seized hold of the executory promise and regard that as done which the parties had promised to do, and thus secure to the lessor a perfect and effective lien, as stipulated in the agreement. (See, also, *Flagg* v. *Mann*, 2 Sumn., 487; *Chase* v. *Peck*, 21 N. Y., 581; *Gilson* v. *Gilson*, 2 Allen, 115; *Peckham* v. *Haddock*, 36 Ill., 38; *Chadwick* v. *Clapp*, 69 id., 119.)

As to the other items of property we think, on reading all the provisions of the agreement, that it was the intent and purpose of the parties to give the vendors a lien thereon for the purpose of securing the unpaid purchase-money, and the clause which provides that the same should remain upon the premises and as a part and parcel of the same until all the payments should be made and

completed, was inserted for the purpose of securing that end. The form or particular nature of the agreement which will be sufficient to create a lien is not very material, for equity looks to the final intent and purpose of the parties rather than at the form, and if the intent appeared to give, or to charge, or to pledge property, real or personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified the lien follows. (Pomeroy's Eq. Juris., § 1237 and the cases cited in the foot notes.)

The fact, as alleged in the complaint, that Kervin had abandoned the premises and the plaintiffs had regained possession of the same and are engaged in operating the wells and receiving the product of oil and the avails thereof, is no bar to his maintaining an action to foreclose this lien, and is an additional reason why they should institute foreclosure proceedings and render an account of the avails of the property so that the true amount of the unpaid purchase-money may be ascertained.

The defendant Reid is the general assignee of Kervin, and for that reason he is a proper party defendant. As to the other defendants the complaint avers that they have or claim some interest in the property subsequent and subordinate to the lien of the plaintiff, and in their answers they set up a lien upon the property and claim that the plaintiffs' debt has been fully paid and satisfied. The plaintiffs having a lien on the property as against their vendee, in an action to foreclose the same, there can be no doubt whatever but that the defendants named were proper parties in this action. (*Fowler* v. *Mutual Life Ins. Co.*, 28 Hun., 198; *Brown* v. *Volkening*, 64 N. Y. 76.)

The judgment should be reversed, new trial granted, with costs to abide the event.

SMITH, P. J., HAIGHT and BRADLEY, JJ., concurred.

Judgment reversed and new trial ordered, costs to abide event.