# Nelson *v.* Stollenwerck.

*Bill in Equity for Foreclosure of Mortgage.*

1. *Assignment of note by administrator.*—A promissory note, payable to an administrator, assets of his intestate's estate, may be transferred or assigned by him without an order of court; and in the absence of fraud, or collusion between the administrator and the assignee, the transfer cannot be impeached by the beneficiaries of the estate, when the assignee attempts to foreclose a mortgage given to secure the note.

APPEAL from the Chancery Court of Hale.
Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 18th February, 1874, by Alphonse Stollenwerck, against John Nelson, Jabez C. Nelson, George T. Nelson, and William G. Miller; and sought to foreclose two mortgages, one executed by said George T. Nelson, and the other by said John Nelson and Jabez C. Nelson, and to have the property conveyed sold for the payment of a promissory note, held and claimed by the complainant, which was one of the debts secured by said mortgages. The said promissory note was for $750; was signed by said John Nelson, Jabez C. Nelson, and George T. Nelson; dated the 8th March, 1873, and payable on or before the 12th December, 1873, to R. B. Waller, as the administrator of the estate of Gideon E. Nelson, deceased, who was the father of said John, Jabez, and George Nelson; and a copy of it was made an exhibit to the bill. The estate of said Gideon E. Nelson was insolvent, and said administrator had sold the lands, under a decree of the Probate Court, for the payment of debts. Said John Nelson became the purchaser of a portion of the lands, but had not paid the purchase-money as required by the terms of the sale; and the administrator had obtained judgments against him and Jabez C. Nelson, who had signed, as surety, one of the notes given for the purchase-money, and had also commenced proceedings to recover the lands, or to enforce his vendor's lien. John and Jabez C. Nelson were cultivating the lands on joint account, and they were largely indebted to Carlisle, Jones & Co., commission-merchants in Mobile, for supplies furnished, and were anxious to procure additional supplies and advances, to enable them to make a crop during the year 1873. This being the condition of the parties, by mutual agreement

[Nelson v. Stollenwerck.]

among them, the administrator dismissed his legal proceedings to recover the lands, and the said John and Jabez Nelson executed to him their said note for $750, as the estimated rent of the lands for the year; and also executed a mortgage on their entire crop to said Carlisle, Jones & Co., to secure the indebtedness to them, the advances made by them during the year, the said note for $750, and a debt due to William G. Miller and John E. Love; and at the same time, and as part of the same transaction, George T. Nelson, who had become bound as surety for his said brothers on their new liability to Carlisle, Jones & Co., executed to them a mortgage on a tract of land which he owned, as additional security for all of said debts. These are the mortgages which the bill sought to foreclose. The note for $750 was indorsed in blank by said administrator to A. B. Pittman, and the complainant claimed to be the owner and holder of it by purchase for valuable consideration from Pittman. The bill alleged that, at the time of the execution of said note, the administrator was indebted to said Pittman, "for money advanced by him to pay certain preferred claims, taxes, and expenses of administration, in the aggregate exceeding the amount of said note," and that he transferred the note to said Pittman in part payment of this indebtedness. It is alleged, also, that Carlisle, Jones & Co. had received a portion of the mortgaged crop, and had been paid the entire amount of their debt, and that they refused to execute the trusts of the mortgage for the benefit of the complainant. The prayer was for an account of the complainant's debt, the appointment of a reciver to gather and take charge of the crop, a sale thereof and of the land, or so much as might be necessary to pay the complainant's debt, and for general relief.

A decree *pro confesso* was taken against Carlisle, Jones & Co. Miller & Love answered, asserting their rights under the mortgages, but declaring that they did not wish to see the Nelsons injured by a sale of their property at a sacrifice. The Nelsons jointly demurred to the bill, on the ground that the complainant showed no title to the note, the payment of which he sought to enforce by his bill. The chancellor overruled the demurrer, and they then filed a joint answer, admitting the purchase of the lands at the administrator's sale, and the execution of the note and mortgages, substantially as above stated; alleging that they had not paid their notes to the administrator, because they were the largest creditors of the estate, their claims amounting to about $110,000, while all the other claims filed against the estate amounted only to about $27,000; and as to the transfer of

the note to Pittman, answering as follows: "These respondents know and say, that said Waller, as such administrator, had received moneys belonging to the estate of said Gideon E. Nelson, to a large amount, and certainly exceeding $8,000, and, to the best of their knowledge, information, and belief, the moneys so received by him were greatly more than sufficient to pay·all preferred claims, taxes, and expenses of administration against said estate; and they further say, that they have no knowledge or information as to any such indebtedness of said Waller, as administrator, to said A. B. Pittman, as alleged in said bill, and do not believe there was ever such indebtedness, and so they deny any such indebtedness. And these respondents are advised, and insist, that said Waller had no right, as administrator, to incur any such indebtedness to said Pittman, and if he did incur any such indebtedness to said Pittman, it was his own personal indebtedness, and he had no right to assign or transfer said note to said Pittman therefor."

The cause was submitted for final hearing, on the part of the complainant, on the bill and exhibits, and the deposition of said Pittman; and on the part of the defendants, on their answers alone. In reference to the transfer of the note, said Pittman testified as follows: "I acquired the entire interest in said note by the indorsement of said R. B. Waller in blank, and its delivery by him to me, in consideration of sundry payments which I had made for him, as administrator of said estate, out of my own funds; and I assigned said note to said complainant, A. Stollenwerck, in consideration of goods and merchandise—that is to say, in consideration of my account with him." And in answer to a cross-interrogatory he further testified: "I acquired said note, as before stated, from said administrator. I exhibited to him a statement of what I had paid, with some of which payments he was already familiar. I told him I would take the note on account, if he was willing. He agreed, and indorsed it in blank. The note, when executed, was delivered to me, and I carried it to Mr. Waller; and I acquired it in ten days after its execution. I do not know whether I can state all that I paid for him, but I can state more than twice the amount of said note. I paid $1,343.17 to Mrs. Laura G. Nelson, in whose favor there was a decree against said Waller. These payments were made to her by me during the year 1871, which I find included in a memorandum of a settlement which I had with her in January, 1872. A part of it was cash which I had paid for her, out of my own funds, in costs of suit; part I paid to her son; and a large part was for fees which she owed me, and took my receipts

therefor as cash. On 2d September, 1871, I paid Booker & Knight $436.51, taxes which they had paid out for the estate. I paid this by receipting to them for that amount on an account which they then owed me."

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, for the amount due on the note, and ordered a sale of the mortgaged property by the register, or so much thereof as might be necessary, if the amount was not paid by said defendants within sixty days. The final decree, and the overruling of their demurrer to the bill, are now assigned as error by the Nelsons.

SMITH & ROULHAC, with W. G. JONES, for appellants.—The note is payable to the administrator in his representative character, and shows on its face that it is assets of the intestate's estate; and any purchaser of it is chargeable with notice of that fact, and can acquire no better title than the first assignee had. A purchaser who is chargeable with notice, although he may have acted in good faith, acquires no better title than his vendor had.— *Wilson v. Wall*, 34 Ala. 304–5; *Witter v. Dudley*, 42 Ala. 617; *Johnson v. Thweatt*, 18 Ala. 747. Hence, the material question is, whether Pittman acquired a good title by his purchase from the administrator; and it is insisted that, on the face of the bill, and also on the facts stated by himself in his testimony, the transfer to him was without legal authority. At common law, an administrator had absolute and unqualified power to dispose of the assets which came to his hand,—meaning all kinds of personal property. But this power was subject to great abuse, and its exercise sometimes resulted in the wasting and squandering of the entire estate. To guard against this abuse, and to preserve the rights of the distributees and creditors, the statute has entirely changed the common-law rule, and has deprived the administrator of all power to dispose of the property, except in the manner prescribed by the statute itself—that is, by an order of the proper court.—*Dearman v. Dearman*, 4 Ala. 521; *Bogan v. Camp*, 30 Ala. 276; *Ventress v. Smith*, 10 Peters, 161; *Ikelheimer v. Chapman*, 32 Ala. 686. The statute was intended to remedy a great evil, and is general in its terms. It applies to all kinds of personal property—stocks, bonds, promissory notes, and other *choses in action*. It was not only intended to take away from the administrator a power which was liable to great abuse, but to enable the beneficiaries of the estate to show that there was no necessity for a sale, and to realize the highest market value of the property when sold; and all kinds of personal property are equally within these objects.

[Nelson v. Stollenwerck.]

THOS. J. SEAY, with WALLER & PITTMAN, *contra*, cited *Woolfork v. Sullivan*, 23 Ala. 548; *Moses v. Clark*, 42 Ala. 229; *S. C.*, 50 Ala. 326.

MANNING, J.—The bill in this cause was filed by appellee for a decree to sell mortgaged property to pay a promissory note, which the mortgage was made to secure. The note was given by appellants to the administrator of their father's estate, who indorsed it to one Pittman, for moneys advanced by the latter to pay taxes, and other debts of the estate having priority of payment; and Pittman assigned it to appellee. The estate was insolvent, and was under administration as such; and appellants, who were defendants in the Chancery Court, claimed to be its largest creditors. Probably they were so, though no evidence on that subject was introduced; nor was any charge made in their answer, of fraud on the part of the administrator, or of insolvency. The bill was demurred to; and the defense relied on is, that, under the statutes of this State, which require sales of the property belonging to the estates of deceased persons to be made at auction, the administrator had no right to transfer the note in suit to Pittman; and that, therefore, his assignee, the complainant, acquired no title to it.

On the subject of the power of an executor or administrator, this court said, in *Waring v. Lewis* (53 Ala. 630): " He has the full legal title to the *choses in action* of the deceased, and is charged with the duty of collecting them, and reducing them to possession. He may transfer, release, compound, or discharge them, as fully as if he was the absolute owner, subject only to his liability to answer to creditors and distributees, for improvidence in the exercise of his power. No *bona fide* dealing with him can be impeached—no remedy can be pursued against those to whom he may transfer, or whom he may release, or with whom he may compound, or from whom he accepts satisfaction, of the *choses in action*, unless fraud or collusion can be imputed to them." Under this ruling, the defense cannot be sustained.

Let the decree of the chancellor be affirmed.