## McDEARMON, Ex'R. v. MAXFIELD ET. AL.

1. ADMINISTRATION: *Power of executor over personally before his qualification.*

    An executor's powers before qualification, are limited to the burial of the deceased and the preservation of his estate; but if before then he intermeddles with the estate, his subsequent qualification legalizes his tortious acts, making him liable to those interested in the estate, and protecting the party with whom he deals. The title to the personal property of a deceased, is in abeyance until his executor qualifies or an administrator is appointed, when it vests in him by relation from the time of his death.

2. WITNESS: *Party in suit against executor.*

    A party in a suit against a surviving executor, may testify of his transactions with a deceased executor in relation to the matters in controversy.

APPEAL from *Independence* Circuit Court.

Hon. R. H. POWELL, Circuit Judge.

*Henderson & Caruth,* and *Franklin Doswell,* for appellant.

The powers of an executor before probate of will, are limited to the burial of deceased, payment of funeral expenses and the *preservation of the estate.* *Sec.* 46, *Gantt's Dig.* ; *Diamond* v. *Shell,* 15 *Ark.,* 26 ; *Newton, Ex'r* v. *Cocke,* 5 *Eng.,* 176 ; *Ludlow* v. *Flournoy, et al.,* 34 *Ark.,* 401. An executor is bound, even after grant of letters, to pursue either the directions of the will or the orders of the Probate Court. *Sec.* 73, *Gantt's Dig.*

Defendants took upon themselves the right, and assumed the control of the property, which constituted a conversion. *Gentry* v. *Madden,* 3 *Ark.,* 127 ; *Kent* v. *Welsh,* 7 *J. R.,* 257 ; *Murray* v. *Burling,* 10 *J. R.,* 172 ; *Fish* v. *Cobb,* 6 *Vt.* 622 ; *White* v. *Webb,* 15 *Ib.,* 302.

One who "spontaneously and officiously" proposes to keep the goods of another, will be held to a higher degree of diligence. *Kent Com., vol.* 2, *p.* 739.

The declarations of Wilson McDearmon improperly admitted, *Sec.* 2, *Schedule Const.*, 1874.

An owner of property tortiously obtained and sold, may waive the tort and sue in assumpsit. *Bowman* v. *Browning,* 17 *Ark.,* 599 ; *Peay, adm'r.* v. *Ringo,* 22 *Ib.,* 68.

*J. W. Butler* and *U. M. Rose,* for appellees.

If an executor, before proving the will, does any act affecting the estate, his letters, when granted, will relate back and cover his prior acts, making them valid. *Hatch* v. *Proctor,* 102 *Mass.,* 354 ; *Alford* v. *Marsh,* 12 *Allen,* 604–5 ; *Staggs* v. *Green,* 47 *Mo.,* 500 ; *Sheilaber* v. *Wyman,* 15 *Mass.,* 325 ; *Priest* v. *Watkins,* 2 *Hill (N. Y.)* 226 ; *Rattoon* v. *Overacker,* 8 *John,* 126 ; *Carter* v. *Carter,* 10 *B. Mon.* 330 ; 2 *Redfield on Wills, p. p.* 14, 15, 16, (*ch.* 1, *sec.* 2.)

The executors ratified the action of appellees, and this validates and confirms what they had done. *Omnis rati habitio retrotrahitur et mandate priori equiparatur. Foster* v. *Bates,* 12 *M. & W.,* 226 ; *Brooms Leg. Max.* 677.

Gratuitous bailees liable only for gross negligence. 11 *Ark.,* 189 ; *Story on Bailments, sec.* 28. Forwarding merchants are the agents of consignor, and in the absence of negligence, not liable for losses. *Ib. secs.* 444–502 ; 12 *Johnson,* 232 ; 6 *Allen,* 254 ; *Edwendson on Bailments, sec.* 335.

By bringing assumpsit, the tort, if any, was waived, and the action ratified. 1 *Doug. (Mich.)* 330 ; 17 *Ark.,* 602 ; 31 *Ib.,* 158.

The declarations of a deceased co-executor admissible

under *sec.* 2, *Schedule Const.*, 1874. They were not statements of the testator, Wiley McDearmon, but only of a deceased co-executor, and not within the exception.

SMITH, J. Theodore Maxfield & Bro., were merchants and partners, trading at Batesville, in this State. Wiley McDearmon, who lived in Stone county, had been a customer of theirs for many years. He had fifty-four bales of cotton lying on the bank of White river, on the sixth day of February, 1878, when Edward Maxfield, a member of said firm, who was in the neighborhood upon a collecting tour, came to his house to spend the night. It is probable that it was arranged between them that the firm should ship the cotton to New Orleans. But this we cannot certainly know, since their lips have been sealed, the one by death, and the other by the policy of our law. For, on the self-same night, after they had inspected the cotton and had conversed about its disposition, McDearmon was taken desperately ill, being speechless from the time of his attack until his death, which occurred the next day. After this event Maxfield seems to have been perplexed what to do with the cotton. It was exposed to the weather; the boat, descending the river was due, and it was necessary to come to some determination. The widow of the deceased urged its immediate shipment. His son, John, the present appellant, appears to have advised the same course, and to have pointed out the cotton to Maxfield. There is a conflict of evidence upon the point of John's activity in this matter. But this was a question of fact, which was resolved by the jury in favor of the defendants.

The cotton was marked T. M. X—W. M., meaning Theodore Maxfield & Bros., Wiley McDearmon, and was put aboard of the steamer in the afternoon and night of February 7th, the same day on which its owner had died.

Maxfield, in returning to Batesville, met Wilson McDearmon, the other son of the deceased, who joined in bringing this action, but has died since its commencement. Maxfield informed him of what had been done, and offered to unload the cotton at Batesville and to store it in a warehouse. But Wilson expressed his approval of the course pursued, and insisted on the cotton going forward. At Batesville a bill of lading was taken in the name of Theodore Maxfield & Bros., the consignment being to McGeehee, Snowden & Violet, the factors of the Maxfield's in New Orleans, and who were then in good repute and credit. The evidence shows that it was the custom of the local merchants to ship the cotton of their customers for the account of the shipper and not the owner.

This lot of cotton reached New Orleans on or about February 14, and would have been put upon the market upon arrival, but Wilson McDearmon, who held the receipt of the Maxfield's for the cotton, requested that it might be held up for a better price. Later, he requested that it might be sold ; and both requests were communicated to the factors, by the Maxfield's, and were by the factors obeyed. So the cotton was not sold until March 25th, and McGehee, Snowden & Violet suspended payment on the twenty-seventh of the same month, and have been since adjudged bankrupts. The proceeds of the sale were placed to the credit of the Maxfield's on the books of the factors, but they were not drawn out before the failure, nor has anything been paid to them since by the factors, either on this or any other account. A proposition to pay twenty-five cents on the dollar, was submitted to Wilson McDearmon, through the Maxfield's, and was by him declined on account of the smallness of the per centage, and because the factors desired too long a time within which to pay it.

Wiley McDearmon, at the time of his death, had his will

in the safe of the Maxfield's, and it is possible that Theo-dore Maxfield was acquainted with its contents, as he was one of the subscribing witnesses. The will was afterwards duly proved. The testator left his entire estate to his two sons above named, and to a daughter. He appointed the two sons his executors, and letters testamentary were granted to them March 20th, 1878. In December following they brought this action against the Maxfield's, for money had and received to their use. The answer denied the receipt of the money, and averred that the defendants were gratuitous bailees of the cotton. The jury found for the defendants, and the Circuit Court, on a motion for a new trial, refused to disturb the verdict.

It is proper to say, although it may not affect the legal aspect of the case, that prior to the commencement of this action, the plaintiff's had given no intimation, by word or act, of their intention to hold the defendant's liable for the loss of the proceeds of the cotton. The executors had been indebted to the Maxfield's, and the Maxfield's owed the estate a considerable sum of borrowed money. A settlement was had in the summer of 1878, and a balance was struck against the Maxfield's, and was paid by them. No demand was made on account of the cotton.

Since the jury must have found that the cotton was removed under authority of the plaintiffs, the most important question which the record presents relates to the power of the executors to deal with the property of the testators before proof of the will and the issue of letters.

At common law, the personalty of a testator, vested in his executor, and he might, by virtue of the will and before probate, take possession and dispose of it. In fact he could do almost any act pertaining to his office, except to bring or defend a suit.

McDearmon, ex'r. v. Maxfield et al.

ADMINIS-
TRATION:
Power of
executor
over per-
sonalty
before his
qualifica-
tion. But our Statute, enacted in the interest of creditors and legatees, have modified the common law. The executor's powers, before qualification, are limited to the decent burial of the deceased and the preservation of his estate. *Gantt's Dig.* sec. 46; *Diamond* v. *Shell*, 15 *Ark.*, 26. But if he does intermeddle and afterwards qualifies, his letters relate back and legalize his previous tortious acts; making him accountable to the persons interested in the estate. And this liability to account involves a validity in his acts, which is a protection to those who have dealt with him. 3 *Redf. Wills*, ch. 1, sec. 2, *p. p.* 13–16; *Stagg* v. *Green*, 47 *Mo.*, 500; *Alvord* v. *Marsh*, 12 *Allen*, 603; *Hatch* v. *Proctor*. 102 *Mass.*, 351; *Rattoon* v. *Overacker*, 8 *Johns*, 125; *Priest* v. *Watkins*, 2 *Hill*, 225.

The doctrine, as modified by Statute, may be formulated thus: The title to the personal property of a decedent, is in abeyance until his executor qualifies, or an administrator is appointed, when it vests in him by relation from the time of the death.

Plaintiffs and defendants were all alike trespassers in removing the cotton before letters were granted, but the subsequent issue of letters to the persons named in the will as executors, related back and covered their former acts.

Some of the facts stated above, were proved by the Maxfields in testifying as to the declarations of Wilson McDearmon, the deceased co-executor. And it was contended that the admission of such testimony contravened section 2 of the schedule to our present Constitution, which provides, that in actions by or against executors, etc., neither party shall be allowed to testify against the other as to any transactions with, or statements of the testator, etc. The evidence was competent. See *Wassell* v. *Armstrong*, 35 *Ark.*, 247.

Affirmed.