# Nance *et. al. v.* Gray.

*Bill in Equity to Enforce Vendor's Lien.*

1. *Chancery; note for purchase money of lands; misdescription.*—A clerical error in description of lands embraced in the note, no defence to bill filed to enforce a vendor's lien for unpaid purchase money.

2. *Same; vendor's lien; gravamen of.*—A vendor's lien is based upon the non-payment of the purchase money for lands, and is not dependent upon any formal evidence of the debt.

3. *Same; bond for title; equitable mortgage.*—A bond for title is in the nature of an equitable mortgage, which may be enforced for the full amount embraced therein, irrespective of the fact that a part of the sum secured thereby is not for the purchase money of the lands therein described.

4    *Executors and administrators; letters testamentary; retroactive
     effect of.*—The issuance of letters testamentary, to one who
     had, prior thereto, been acting as executor *de son tort*, relates
     back and validates his prior acts.

5.   *Usury; requirement, as to pleading and proof.*—A debtor, claim-
     ing credit for usurious payments made, must plead and prove
     with like certainty the terms and nature of the usurious agree-
     ment, and the amounts and times of payment.

6.   *Same.*—When the original transaction is not usurious, a subse-
     quent agreement to pay illegal interest in consideration of the
     forbearance of the debt, does not impart the taint of usury to
     the contract.

APPEAL from the Chancery Court of Calhoun.

Heard before the Hon. R. B. KELLY.

In 1883, W. P. Cooper sold certain land to James A. Nance and executed a bond for title to the same in the sum of two thousand dollars, and placed the said Nance in possession of the land. On December 11th, 1893, on a settlement had between W. P. Cooper and Nance, it was ascertained that the balance of purchase money then due by Nance was $413.61, since which time no payments have been made. W. P. Cooper died and W. H. Cooper became executor of his will. Subsequently on Oct. 14th, 1897, James A. Nance executed to W. H. Cooper, as executor of W. P. Cooper, a note in the sum of $555.66, payable on day after date, which note contains the recital that it is for the balance of the purchase money of the lands therein described. The description in said note corresponded with the description of the lands in the bond for title, except that where, in the bond a certain piece of land is described as "The southwest quarter of section 30," in the note, it appears as "The south quarter of section 30."

At the time of the making of this note, said W. H. Cooper, as executor of W. P. Cooper, deceased, executed to said Nance a conveyance to the lands described in the bond for title. Under the terms of the will of W. P. Cooper full power was conferred upon W. H. Cooper to sell and dispose of at his discretion all the property of decedent, real and personal. At the time of the execution of the deed by him to Nance, letters testamentary had not issued to W. H. Cooper, but such letters testamentary

[Nance *et al.* v. Gray.]

were subsequently issued to said W. H. Cooper on Dec. 7th, 1898, more than a year after the execution of the deed to Nance, and of the note by Nance.

Some time during the year 1899, while still acting as executor of W. P. Cooper, the said W. H. Cooper, as executor, transferred said Nance's note to W. C. Gray, the appellee, for a recited consideration of $500. On October 30th, 1899, the letters testamentary which had been issued to said W. H. Cooper were revoked, and, on a final settlement had in the probate court of Calhoun county, said W. H. Cooper charged himself with the full amount of the note executed to him by said Nance. On Feb. 1st, 1902, one Frank Martin was appointed by the probate court of Calhoun county as administrator *cum testamento annexo* of the estate of W. P. Cooper, deceased.

On Feb. 25th, 1902, said James A. Nance executed a deed to said Frank Martin, as administrator, which purported to convey the lands embraced in the deed from W. H. Cooper, as executor, to said Nance. The deed recites it to be "For a valuable consideration."

On August 27th, 1902, W. C. Gray, the appellee, filed an original bill in the chancery court of Calhoun county, reciting the substance of the facts above stated, which, after sundry amendments, made parties defendant, the said James A. Nance, Frank Martin, individually, and as administrator of estate of W. P. Cooper, deceased, and the heirs at law of W. P. Cooper, deceased, among whom was the said W. H. Cooper. The relief prayed was that the deed from Nance to Martin be set aside or declared subordinate to the vendor's lien held by complainant, and that said vendor's lien be enforced by a sale of the lands for the payment of the amount of unpaid purchase money, evidenced by the promissory note transferred to complainant by W. H. Cooper, as executor of W. P. Cooper, deceased. The heirs of W. P. Cooper admitted the allegations of the bill. The defences interposed by James A. Nance and Frank Martin sufficiently appear in the opinion.

The chancellor upon a final hearing rendered a decree granting the relief prayed by the bill, and from this decree James A. Nance, and Frank Martin individually, and as administrator of W. P. Cooper, deceased, appealed.

[Nance *et al.* v. Gray.]

LAPSLEY & MARTIN and KNOX, ACKER & BLACKMAN, for appellants.—It is well settled in law and in equity that the *allegata* and the *probata* must correspond. There is a material variance between the description of the lands in the note and the bond for title, and hence the note is inadmissible as evidence. No matter how just the complainant's demand, if the proof does not harmonize with the allegations of the bill, he cannot recover. *Clement v. Kellogg,* 1 Ala. 330; *Flanagin v. State Bank,* 32 Ala. 508; *Cook v. Bolling & Son,* 99 Ala. 455; *Elyton Co. v. Bottling Works,* 109 Ala. 602; *May v. Miller,* 27 Ala. 515.

The present bill seeks to enforce a vendor's lien for the purchase money of land, and not to foreclose an equitable mortgage, hence, if, as shown, a portion of the consideration of the note was debts other than for purchase money, the complainant can not recover. The note alleged to have been transferred to complainant was without consideration. At the time of its execution, W. H. Cooper had not qualified as executor, although the will of W. P. Cooper has been proven. W. H. Cooper at that time had no authority to act in matters of the estate, nor to receive nor discharge Nance's note. In this State an executor has no power to act until after the issuance of letters.—*Wood v. Cosby,* 76 Ala. 558; 19 Ala. 670.

The note sought to be enforced by a sale of the lands is shown to be usurious and cannot be the basis for the relief prayed.

MATTHEWS & WHITESIDE, *contra.*—W. H. Cooper, as executor of W. P. Cooper, having charged himself with the amount of the Nance note and settled with said estate therefor, he and his assignee, this complainant, are subrogated to all the rights of the estate in the debt of Nance for said lands.—*Dunlap v. Newman,* 47 Ala. 429; *McGehee v. Slater,* 50 Ala. 431.

The acts of W. H. Cooper, as executor *de son tort,* were purged of their tortious character by the subsequent issuance of letters to him. The letters relate back to the death of the testator and make valid all prior acts of administration.—*Hatch v. Proctor,* 102 Mass. 353; *Al-*

*vard v. Marsh,* 12 Allen 603; *Priest v. Watkins,* 2 Hill
(N. Y.) 225; *Mayner v. Ryan,* 19 Mo. 196; *Reagan v.
Long,* 21 Ind. 264; *Hill v. Custin,* L. R. I. Eq. 90, 100;
*Whitehall v. Squire,* 1 Lock, 295; *Vroom v. Van Horn,*
10 Page 549, 557, 558; *Walker v. May,* 2 Hill Ch. (S. C.)
22; *Graybrook v. Fox,* 1 Plowd. 280; *Drury v. Notick,* 10
Allen 147; *Stagg v.* Green, 47 Mo. 500; *McDearmon v.
Maxfield,* 36 Ark. 631; *Scheuler's Exrs. & Admrs.,* § 195.

The plea of usury is bad. "When the defense of usury
is interposed by plea or answer, the terms and nature
of the alleged usurious contract must be stated with dis-
tinctness, and the specific amounts paid for which cred-
its are claimed."—*Woodall v. Kelly,* 85 Ala. 368.

If the original contract be not usurious, a subsequent
agreement to illegal interest for a forbearance does not
impart to the contract the taint of usury.—*Van Beil v.
Fordney,* 79 Ala. 76. Nance having parted with his in-
terest in the land and no personal judgment being sought
against him, cannot plead usury, nor can Frank Martin
plead usury through Nance. 2 Pom. Eq. Jur., 653; *Cook
v. Dyer,* 3 Ala. 644; *Fenne v. Sayre,* 3 Ala. 458; *Harbin-
son v. Harrell,* 19 Ala. 753; *Gray v. Brown,* 22 Ala. 262;
*McGuire v. VanPelt,* 55 Ala. 344; *Griel v. Lehman,* 59
Ala. 419; *Butts v. Broughton,* 72 Ala. 294; *Mose v. The
Association,* 100 Ala. 465. The variance in the descrip-
tion of the lands in the note and in the bond for title is
immaterial and does not affect the lien for the purchase
money. This is an action *in rem* and the note is only ma-
terial as fixing the amount due.—*Chapman v. Lee,* 64
Ala. 483. The variance between allegation and proof is
not material unless it misleads the adverse party to his
prejudice.—*Deakin v. Underwood,* 5 Am. St. Rep. 827;
*Duboise v. Beaver,* 82 Am. Dec. 326; *Lanier v. Westcott,*
82 Am. Dec. 404. The consideration of a note or deed
may always be explained.—*Kelly v. Karsner,* 81 Ala.
500; *Wilkerson v. Palmer,* 82 Ala. 367.

SIMPSON, J.—As the arguments of counsel do not
follow the assignments of error, in order, we will take
up the points contended for in the order presented.

The first contention of appellant is that the *allegata*
and *probata* do not correspond, because the copy of the

note of October 14, 1897, as set out in the original bill, in the first call in the description of the land was the "South quarter" of section 30, and the original note, in the record has the "Southwest quarter" of section 30. (The word "west" being written with different ink apparently and evidently written after the original writing of the note, as it runs up above the line and is written across the bracket enclosing the quarter).

The deposition of W. H. Cooper fully identifies this note as the one which was given for the payment of balance due on the land, and it would only have been necessary to amend the pleading slightly to make it conform exactly to the exhibit, and whether the word "west" was in it or not at the time of its delivery, would not have changed the legal effect of the transaction. The variance is immaterial.—*Lazier v. Wescott,* (26 N. Y. 146), 82 Am. Dec. 405; *Deakin v. Underwood,* (37 Minn. 98), 5 Am. St. Rep. 827.

Under the original transaction in this case, the vendor had an equitable mortgage on the land, and the settlement, and giving of the deed and making of the note changed the equitable mortgage into a vendor's lien, and, in either event, the *gravamen* of complaint's claim was that the land had been sold and the purchase money not all paid, which could be sustained by proper proof either with or without the note.—*Hester v. Hunnicutt,* 104 Ala. 282; *Culver v. Caldwell,* 137 Ala. 125.

As to the effect of the alteration of the note, by writing the word "west," (admitting that it was an alteration after delivery) we hold that it is not a material alteration. The obligation of the instrument would have been just as strong without any description of the land, which was merely put in the note to identify it as the note which was given for the balance due on the land.

In the case of *Alabama State Land Co. v. Thompson,* 101 Ala. 570, the Court held that the alteration of the deed itself, even in a material point, did not divest the title to the land, and that the altered deed could be adduced as a memorial of the conveyance.

In the case now under consideration the note was not the basis of the claim for recovery, the suit being to enforce the lien which the law gives, whether there be any note at all or not.

The next insistence of appellants is that the notes for which the lien is claimed were made up of items of amounts due for personal property intermixed with the amount due on the land so that it is impossible to separate them, and that thereby the entire lien was lost.

The only proof of any intermixture relates to the original transaction between W. P. Cooper and Nance, at which time Cooper still held the title to the land and had given only a title bond, so that the lien then held was in the nature of an equitable mortgage and would be as good for the personal property as the land, if the land was not to be conveyed until it was all paid. But, in addition to that, the witness McLellen, who was present, assisted in making the calculations and wrote the endorsement of credit on the bond, says that "All claims were settled, and, *after paying all other claims,* the balance due on the land was $413.61, * * * * All other items were paid in full, and the balance due was on the land." It is certainly within the power of the parties to the transaction, whether it be in cases of an equitable mortgage or vendor's lien, to appropriate payments to the amounts due for personal property, and leave the balance due on the land debt.

So that, whatever view we take of it, the land was burdened with the lien, when W. H. Cooper, as executor, took charge of it, and he testified that he simply executed the deed and took the note of October 14, 1897, for the amount due on the final payment of the land. There was no such intermixture as to invalidate the lien.—*Bankhead v. Owen,* 60 Ala. 457, 466-7; *Hester v. Hunnicutt, supra.*

Appellant claims that, at the time the note in question (that is the $555.66 note) was transferred to complainant, said W. H. Cooper had not qualified as executor, and yet his only claim to the title to the land is based on the deed made by said Cooper, at the same time to defendant Nance, so that, if that be true and the contention of appellant correct, Nance and his vendee never acquired any title to the land, and the only rights which any of them could claim would be under the original title bond, and the note or indebtedness under it still remains due. As a matter of fact the testimony of com-

plainant shows that, while the deed to Nance was made before the letters testamentary were issued to W. H. Cooper, yet the note was not transferred to complainant until after said Cooper was qualified as executor.

But however this may be, we hold that the letters testamentary which were issued to Cooper related back and validated his acts as executor *de son tort* before.—*Hatch v. Proctor,* 102 Mass. 353; *Alrord v. Marsh,* 12 Allen, 603; *Vroom v. Van Horn,* 10 Paige 549; *Walker v. May,* 2 Hill Ch. (S. C.) 22; *Stagg v. Green,* 47 Mo. 500; *Mc-Dearmon v. Maxfield,* 38 Ark. 631; 11 Am. & Eng. Ency. Law, p. 1355; *Ward v. Borill,* 10 Ala. 200.

The executor has the full legal title to choses in action and debts due the deceased and may release, compound, discharge and transfer them, he being answerable for improvidence in the exercise of that power.—*Waring v. Lewis,* 53 Ala. 616; *Van Hoose v. Bush,* 54 Ala. 343; *Baldwin v. Hatchett,* 56 Ala. 461; *Hutchinson v. Owens,* 59 Ala. 326; *Nelson v. Stolenwerk,* 60 Ala. 140; *Skelton v. Carpenter,* 60 Ala. 201.

It is insisted next that the note, which evidences the debt, is a renewal of the original note of $413.61 and that note was tainted with usury.

The only allegation in regard to usury in the pleading is the plea filed by Jas. A. Nance, which alleges that "Said note (referring to the $555.66 note)   *   *   * is usurious and void for the interest thereon, and that usurious interest has been included therein in the sum of $500.00." And all the evidence on the subject of usury is that Nance states, in his testimony, that his recollection is that, when the settlement was made between him and W. P. Cooper, (when the $413.00 note was given), he was charged 10 per cent interest; and the witness Mc-Lellen states that his recollection is that, at that settlement, Nance was charged 10 or 12 per cent. interest.

When one who claims to have made usurious payments on a debt seeks credit thereon, the law requires; 1st, that he set out in his pleading, distinctly and correctly, the terms and nature of the usurious agreement, and the amounts of payments made which are claimed to be usurious; 2nd, that proof be made with the same definiteness.—*Hunter v. Linn,* 61 Ala. 492; *Woodall v. Kelly,* 85 Ala. 368.

16s

We do not think that the usury is either alleged or proved with the distinctness which the law required. There is no statement to show what the various payments, charges and credits were, which went to make up that settlement, with their dates, from which a calculation could be made with any degree of accuracy showing what amount of interest was included in that settlement.

It is not claimed, nor is there any evidence to show, that there was any usurious agreement in the contract as originally made, when the title bond was given.

When the original transaction is not usurious, a subsequent agreement to pay illegal interest, in consideration of forbearance, etc., does not import to the contract the taint of usury.—*Van Beil v. Fordney,* 79 Ala. 77; *Woodall v. Kelly,* 85 Ala. 368.

There is really no proof of any agreement to pay illegal interest in this case, the only proof being the statement of the two witnesses that, according to their recollection, 10 or 12 per cent was charged in the settlement between the testator and Nance. The defense of usury was personal to Nance at any rate.—*Cook v. Dyer,* 3 Ala. 643; *Feuns v. Sayre,* 3 Ala. 458; *Harbinson v. Harrell,* 19 Ala. 753; *Gray v. Brown,* 22 Ala. 262; *Cain v. Gimon.* 36 Ala. 168; *Griel v. Lehman,* 59 Ala. 419; *Butts v. Broughton,* 72 Ala. 294; *Moses v. H. B. & L. A.,* 100 Ala. 465.

As hereinbefore shown, the note was transferred to complainant, after W. H. Cooper qualified as executor, and he had the entire control of it, with power to dispose of it. Afterwards he made a final settlement of his executorship, in which he charged himself up with the full amount of this debt, so that the estate has been fully paid by W. H. Cooper, who, having accounted for it, became the owner of the obligation. Nance has nothing to complain of, as the land is liable for the debt and he showed a willingness to appropriate it for its payment. The note has never been paid to Cooper or his assignee.

The defendant Martin had knowledge of the fact that the Nance note was out against the land. He was also a

party to the settlement, by which W. H. Cooper charged himself up with the sale of the Nance note, and he claims that his supposed purchase of the land was only for the purpose of paying therewith this very note, and, since the estate has been satisfied and the complainant is the only party unpaid—he was entitled to the decree.

The decree of the court is affirmed.

McCLELLAN, C. J., TYSON, and ANDERSON, J.J., concurring.