# Lehman Brothers *v.* McQueen.

*Bill in Equity for Foreclosure of Mortgage, and Account.*

1. *Revision of chancellor's decree.*—On appeal from the final decree in a chancery cause, whether the question for revision is upon matter of law or matter of fact, the decree must stand, unless it clearly appears to be erroneous.

2. *Burden and sufficiency of proof.*—In the consideration of questions depending upon conflicting evidence, it is important to bear in mind upon which party lies the burden of proof, which always rests upon him who affirms the existence of the disputed fact, or claims a right or benefit under it; and if the evidence is equally balanced, or leaves the mind in a state of doubt and uncertainty, the issue must be decided against him.

[Lehman Brothers v. McQueen.]

3. *Payments to mortgagee, after notice of transfer.*—When a mortgage is transferred as collateral security, and notice of such transfer is given to the mortgagor, payments subsequently made by him to the mortgagee are at his own peril; and when he claims a credit for them, under a bill to foreclose by the transferrees, he assumes the ¿burden of proving they were made by authority of the transferrees.

4. *Verbal admissions and declarations.*—Verbal admissions or declarations, made by a party in interest, are competent evidence against him; but they must be received with great caution, ¿being evidence in its own nature unsatisfactory, and their value as evidence depends greatly upon their consistency with other evidence not subject to like infirmities.

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed in February, 1877, by Lehman Brothers (a partnership doing business in the city of New York), Lehman, Abraham & Co. (a partnership doing business in New Orleans), and Lehman, Durr & Co. (a partnership doing business in Montgomery, Alabama), against John G. McQueen, and the partners composing the firm of Moore, Waldman & Co., a partnership doing business in the city of Montgomery; and sought the foreclosure of a mortgage, which said McQueen had executed to Moore, Waldman & Co., for advances to make a crop during the year 1874, and which the mortgagees afterwards transferred, as collateral security, to the complainants. The complainants below are the appellants, and they here assign as error the allowance by the chancellor, on the statement of the account, of certain payments claimed by McQueen to have been made by him to Moore, Waldman & Co. after notice of the assignment.

CLOPTON, HERBERT & CHAMBERS, for the appellants.

CLEMENTS & ENOCHS, and GIRARD COOK, *contra.*

BRICKELL, C. J.—The assignments of error involve no other question than the propriety of the decision of the chancellor upon matters of fact. An appellate court is reluctant to disturb the findings of fact made by a primary court. When, however, the duty of revision lies within its jurisdiction, it must be performed in view of the settled rules and principles of law. If a primary court is charged with the duty of ascertaining and determining matters of fact, dependent in any degree upon the *viva voce* examination of witnesses, without the aid of a jury, there are obvious reasons for attaching to its findings much of the force and effect of a verdict of a jury, which is not interfered with, unless shown to be plainly erroneous. That rule can not be applied to the decision of a chancellor, who decides wholly on evidence in writing, which, ¿in the same form, and under

the same circumstances, is presented to the appellate court. Whether a judgment or decree is assailed for error of law, or of fact, the presumption of correctness is indulged, and it must be removed by the party complaining. It is not enough that it may not appear clearly that the sentence of the inferior tribunal is right, for then it is protected by the presumption : it must clearly appear that it is erroneous, or it must stand.    In this respect, there is no distinction between the decrees of a chancellor, whether the question for revision is upon matter of law, or of fact.—*Marlowe v. Benagh*, 52 Ala. 113 ; *Rather v. Young*, 56 Ala. 94.

The matter of dispute between the parties is, whether McQueen shall be allowed credits on the mortgage debt, for cotton delivered by him to Moore, Waldman & Co., in 1874, and in 1875, and for six hundred dollars, he alleges he paid to them, on 17th March, 1875.    The chancellor allowed the credits, in view of all the evidence.

In the consideration of all questions of this character, dependent upon conflicting evidence, it is important to inquire, and bear in mind, upon which party lies the burden of proving the disputed fact.    For, when the law casts the burden of proof upon a party, if he does not offer evidence of the fact, for all the purposes of the particular case, the non-existence of the fact must be assumed.—*Douglass v. Eason*, 36 Ala. 687.    Or, if the evidence in reference to the fact is equally balanced ; or, if it does not generate a rational belief of the existence of the fact, leaving the mind in a state of doubt and uncertainty, the party affirming its existence must fail for want of proof.—*Lindsay v. Perry*, 1 Ala. 20 ; *Brandon v. Cabaniss*, 10 Ala. 155; *May v. Williams*, 27 Ala. 269 ; *Harris v. Bell, Ib.* 520.    The burden of proving a disputed fact rests, in all cases, upon the party affirming its existence, and claiming to derive right and benefit from it. A plaintiff is bound to make good his case, so far as it is denied by the defendant ; but, when a defendant seeks to avoid a clear right of the plaintiff, because of some independent fact, the existence of which he affirms, the law casts upon him the burden of proving it, if it becomes matter of dispute.    A plaintiff proves the existence of a debt, which the defendant claims to have paid.    In the first instance, proof of the debt would rest upon the plaintiff, if it was denied; and if his evidence was insufficient, he would fail for want of proof.    But, the debt being proved, the burden of proving payment rests upon the defendant ; and if his evidence is insufficient, he would fail for want of proof.

There is no room for doubt, and so it was found and declared by the chancellor, that on the 10th August, 1874,

Lehman, Durr & Co., for themselves and the other appellants, became the holders of the mortgage, as collateral security for debts of the mortgagees, Moore, Waldman & Co., maturing at different periods in the year 1875.   It is a fact about which there is no dispute, that of the transfer, the mortgagor, McQueen, had notice in August, 1874, before he made any the payments to Moore, Waldman & Co., for which credit is now claimed.   The rights and equities of the transferrees attached fully, when notice of the transfer was given to McQueen.   By no subsequent dealings or transactions with the mortgagees, could he acquire rights which would impair the rights and equities of the transferrees. All such dealings were at his own peril, and in subordination to the prior right and equity of the transferrees, of which he had notice.   A right to protection in the payments to the mortgagees, made after notice of the transfer, is claimed, because, as is averred, they were authorized by Durr, one of the transferrees.   Whether the authority was given, is the disputed matter of fact.   That the burden of proving it rests on McQueen, is apparent.   The existence of the authority is an independent fact, affirmed for his protection, in avoidance of the clear and established right of the appellants.   Without proof, its existence can not be admitted or assumed.

The only direct evidence of the fact is found in the deposition of the mortgagor.   Admitting having received the notice of the transfer given him by letter on the 12th August, 1874, he states that he was induced by it, when ready to make the first delivery of his crop of cotton grown in 1874 (which was covered by the mortgage), to offer to deliver to the transferrees ; and that he did propose the delivery to Durr, who said to him :  " Turn it over to Moore, Waldman & Co., they have arranged their matter with us, and are as good as they ever were ; we are amply secured, over and above your paper."   The verbal admissions or declarations of a party in interest are competent evidence against him ; but we are constantly admonished that they must be received with great caution, and that the value of evidence of them depends greatly upon its consistency with other evidence not subject to its infirmities.   When there is no reason to apprehend fabrication, there is such danger of mistake, or imperfection, in the repetition of ·the mere oral statements of another—so much of uncertainty as to the clearness with which his meaning was expressed, or whether he was understood by the witness as he intended to be understood, that in its own nature the evidence is unsatisfactory. *Garrett v. Garrett*, 29 Ala. 439; *Wittick v. Keiffer*, 31 Ala.

199. Intentional misrepresentation, there was no reason or motive inducing Durr to make; and it is certain, if he made the statements imputed to him, they were not only adverse to his interest, but were in fact wholly untrue. No one of the debts of Moore, Waldman & Co., for which the mortgage was held as security, had matured at the time it is said he made these statements, or would mature earlier than the succeeding February. The time the statements were made is identified, as that of the first delivery of cotton, which is shown to have been on the 2d September, 1874, but twenty days after notice of the transfer of the mortgage had been given, and twenty-two days after the transfer was perfected by the delivery of the mortgage. Without intending to impute intentional fabrication, it must be said, it is highly improbable, in view of the facts shown clearly, that Durr could have made the statement. There is more probability that the memory of the mortgagor is at fault, and he is now innocently attributing to Durr statements which may have been made to him by one or the other of the mortgagees, with whom he seems to have had continuous, confidential and intimate business relations. The statement, in itself, in its entirety, indicates that it would more probably have proceeded from them, than from a creditor who had just compounded large debts with them at twenty-five cents on the dollar. They would more probably declare to a customer, whose business they were anxious to retain, that *they were as good as they ever were*, than would a creditor in Durr's condition, with no motive to speak of their present condition on any terms.

There are other facts which are shown clearly, with which there is much difficulty in reconciling this evidence. The mortgagor knew, in March, 1875, that the mortgage remained in possession of Lehman, Durr & Co. He then obtained from them an advance of money; Moore, Waldman & Co. waiving the priority of the mortgage to that extent, in favor of a mortgage he then executed for the advance. The waiver was necessary, to protect the transferrees, by whom the mortgage was held as collateral security. He makes no inquiry why the mortgage remains in possession of Lehman, Durr & Co, though he had been informed the debts of Moore, Waldman Co., for which it was originally a security, had been arranged. Nor does he inquire whether he has received on it the credits now claimed, for the cotton delivered in 1874. He continues his dealings with Moore, Waldman & Co., until they became insolvent, with full knowledge of the fact the mortgage is not in their possession, but in the possession of the transferrees; not ceasing these

[Lehman Brothers v. McQueen.]

dealings until a few days before the last notice of the transfer is traced to him. Then, for the first time, he asserts to the transferrees that the mortgage is paid, or *about liquidated*.

On the other hand, there are circumstances indicating a want of diligence by the transferrees in asserting and maintaining their rights, which are not satisfactorily explained. They made no effort to obtain the crop of cotton of 1874, covered by the mortgage, and apply it in payment of the mortgage debt; nor any inquiry as to what disposition was made of it. It may be, this passiveness resulted from the nature of their claim to the mortgage—that it was held by them as collateral security only, for debts no one of which matured earlier than February 1st, 1875, and the others at later periods. They had given the mortgagor notice of the transfer, protecting him from any claim or demand of the mortgagees; leaving their want of diligence a matter of concern only as between themselves and the mortgagees. A fair inference can not be drawn from this fact, in view of the other evidence, that they knew of and assented to the delivery of the cotton to the mortgagees, or that payment of the debts was or should be made to them.

The result is, to say the least, that the whole evidence leaves it in doubt and uncertainty, whether the transferrees authorized or assented to the payments claimed to have been made on the mortgage debt, to the mortgagees. The law then declares that the defense, depending wholly upon this fact to avoid a clear right of the appellants, must fail. "Whatever facts are necessary to be established—whether by the plaintiff, to give him a right to recover, or by the defendant, to sustain his defense—must be proved." It can not be said there is proof, when the evidence fails to generate a rational belief of the existence of a disputed fact.—*May v. Williams, supra; Brandon v. Cabaniss, supra.* The error of the chancellor lies in not applying the rule of law, demanding from a party on whom rests the burden of proof satisfactory evidence of the disputed fact affirmed by him, to avoid rights which are clearly shown.

The decree of the chancellor must be reversed, and the cause remanded for further proceedings in conformity to this opinion.