# Alexander *v.* Hooks *et al.*

84 605<br/>104 288

*Bill in Equity to enforce Vendor's Lien.*

1.· *Vendor's lien; sale of real and personal property at gross price.* Where the contract of sale embraces both real and personal property, and no *data* are furnished by which to ascertain that a separate and definite price was fixed for the land, there is an implied waiver of a vendor's lien.

2. *Admisssons; weight as evidence.*—The verbal admissions of a deceased party, though competent evidence, should be received with great caution, 'especially when many years have elapsed since they were made, and they are inconsistent with a writing signed at the time of the transaction to which they relate.

APPEAL from Colbert Chancery Court.

Heard before Hon. THOMAS COBBS.

J. B. MOORE, for appellant.

L. B. COOPER & R. C. BRICKELL, *contra.*

SOMERVILLE, J.—It is now a statutory rule, imposed upon this court by the adoption of the new Code, that "in deciding appeals from the Chancery Court, *no weight shall be given the decision of the chancellor upon the facts*, but the Supreme Court shall weigh the evidence, and give judgment as they deem just."—Code, 1886, § 675. This statute was manifestly designed to abrogate the rule heretofore established that the decree of the chancellor upon the facts would not be reversed or disturbed by the appellate court, unless we were clearly convinced that it was wrong, or, as was often said in equivalent language, unless there was a decided preponderance of evidence against the conclusion attained in the decree. And, in the consideration of this case, we shall regard the new rule as superseding the old one, and be governed by it accordingly.

The present bill filed by the appellant, Alexander, is one for the enforcement of an alleged vendor's lien. The defense set up, and mainly relied on is, that the note which is sought to be fastened as a vendor's lien on the land described in the bill was based on a mingled consideration of land and personal

[Alexander v. Hooks et al.]

property, and the evidence failing, as is insisted, to satisfactorily show that the price of the land was ascertained and distinguished from that of the personalty, no lien can be allowed for the aggregate or gross sum. If the evidence sustains this contention—that is, if it satisfactorily appears that the sale made by the complainant Alexander to William Hooks, deceased, embraced both real and personal property, and the complainant fails to show, by reasonably convincing testimony, that a particular price was agreed on for the *land* as distinct from the aggregate amount allowed for *both* the land and the personalty—we must, under our decisions, regard the vendor's lien as waived and abandoned, and hold the bill to have been properly dismissed by the chancellor. *Stringfellow v. Ivie*, 73 Ala. 209; *Wilkinson v. Parmer*, 82 Ala. 367; *Betts v. Sykes*, *Ib.* 378.

· The sale was made on October 14th, 1873, the complainant on that day executing to the vendee, Hooks, his bond for title, and the latter executing his several promissory notes for the purchase-money, one of which—the foundation of this suit—seems to have been renewed in January, 1878. The notes all recite the consideration to be land. The title bond obligates the complainant to make a good and lawful deed to a described tract of land, and, after reciting the notes of the vendee as the consideration of the sale, the following *addendum* is written at the foot of the title bond, and bearing the same date:

"I also *embrace in sale* my interest in *four mules*, and the *corn* made on the place this year, and all *the tools*, and *wagons*, and *all other stock* on said place, this the 14th day of October, 1873."

Here follows the signature of the vendor, with those of the two subscribing witnesses to the instrument, each in its appropriate place. It is thus obvious that the written contract between the parties unquestionably shows on its face a sale of both real and personal property at a gross or aggregate price, and *prima facie* no vendor's lien arises, or can be implied from the transaction.

It is attempted to prove that the entire purchase-money was due for the land exclusively, and that the personal property was "thrown in" without charge in the trade—an assertion, the *onus* of which is cast on the complainant.

The chancellor properly ruled that the entire testimony of the complainant was inadmissible, he being incompetent to testify as to any statement by, or transaction with, the de-

[Alexander v. Hooks et al.]

ceased vendee, William Hooks.—Code, 1886, § 2765. We shall accordingly discard the testimony of this witness, as not proper to exercise any influence on our decision.

The only remaining evidence bearing on the question is found in the testimony of J. F. Alexander and J. W. Alexander, both of whom are the brothers of the complainant. They are not supposed to be free from that natural and instinctive prejudice which finds its origin, spontaneously and often honorably, in the fact that "a brother is born for adversity." Each of these witnesses undertakes to state occurrences and conversations that transpired some thirteen years previously. The latter is an attesting witness to the agreement. The interrogatories, which seek to elicit the answers of this witness bearing on the question in dispute, are offensively leading, in almost putting the desired answers in the mouth of the witness. These he answers—"as well," he observed, "as he could recollect"—by asserting that "the personal property was thrown in as an inducement to buy the land after the bond was *signed*." This, by necessary implication was before the delivery of the bond, which was the completion of the trade. The frailty of this witness' memory is shown by his statement that his brother, J. F. Alexander, was the other attesting witness to the paper, whereas it was his nephew, J. F. Alexander, Jr., who was then dead. We can not say that he remembers accurately what was said and done thirteen years previous.

The other witness, J. F. Alexander, testifies to an oral admission alleged to have been made by Hooks, on the day after the sale, to the effect that the personal property was "thrown in."

The settled rule with respect to verbal admissions of this nature—especially when, as here, they are inconsistent with a written memorial made many years ago by the contracting parties—is, that they ought to be received with great caution. "This evidence," as said by Mr. Greenleaf, "consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens, also," he adds, "that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say."—1 Greenl. Ev. (14th Ed.) § 200. This principle has received the indorsement of this

court, with an approval also of Mr. Greenleaf's concluding suggestion, that where an admission is deliberately made and precisely identified, the evidence it affords is often of the most satisfactory character.—*Wittick v. Keiffer*, 31 Ala. 199; *Garrett v. Garrett*, 29 Ala. 439. But the value and weight of such evidence depends greatly also upon its consistency with other evidence not subject to like infirmities. *Lehman v. McQueen*, 65 Ala. 570.

In this case, we are not willing that verbal admissions, alleged to have been made about thirteen years prior to the bringing of the present suit, and by one whose lips are now sealed by death, so that he can not be heard to explain or contradict, shall under the circumstances be permitted to outweigh the written recitals of the contract as to the real consideration on which it purported to be based. We accordingly hold that the contract of sale was of real and personal property, without attaching any particular price to the land, and for a consideration in gross; and, for this reason, no vendor's lien can be implied as having been retained. The chancellor so held, and his decree is affirmed.