# Sykes *v.* Betts.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Vendor's lien, when legal title is not retained; sale of real and personal property in gross.*—A vendor's lien, after he has conveyed the legal title, is a mere creation of equity, while it is a lien by contract so long as he retains the legal title; but, while the presumption is that he retains the legal title as security for the purchase-money, that presumption may be repelled by the terms and character of the contract, or by the circumstances; and when there is a sale of real and personal property for a sum in gross, no *data* being furnished by which the separate value of the land can be ascertained, it is immaterial whether a conveyance was or was not executed—a vendor's lien is not retained, and it does not arise by operation of law.

2. *Same; contract for division of decedent's estate.*—Under a written agreement between two married sisters, their husbands uniting with them, for a "distribution and final settlement of the estate" of their deceased father, by which it is stipulated that one is to take certain lands, and pay the other $500, while the second is to take certain other lands, with all the personal property, pay all the debts, and save the first harmless against them; no words of conveyance being used, but provisions to the effect that "all proper instruments and conveyances necessary to carry out this agreement are to be executed between the parties," and that "this instrument is to be recorded as a final settlement and distribution of said estate;" a vendor's lien to enforce the payment of the $500 does not arise by operation of law, and the facts repel the presumption that it was retained by contract; and though it

[Sykes v. Betts.]

is alleged that there were in fact no outstanding debts, and that the personal assets were valueless, these allegations do not show that the $500 was one half of the estimated difference in value of the lands only.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 5th May, 1886, by Andrew J. Sykes and wife, against Edward C. Betts and wife; and sought to enforce an alleged vendor's lien on a tract of land, on account of the non-payment of $500, part of the agreed price, under the terms of a written contract between the parties for the division and distribution of the estate of John M. Swoope, deceased, who was the father of Mrs. Sykes and Mrs. Betts. The agreement, a copy of which was made an exhibit to the bill, was under seal, dated October 1st, 1869, signed by all the parties, and attested by four witnesses; and in the following words, omitting immaterial portions: "This agreement, entered into this   .   .  , witnesses, that the undersigned," naming them, "have by this agreement effected a distribution and final settlement of the estate of John M. Swoope, deceased, between themselves, on the following grounds, viz.: The said Betts and wife are to have the plantation on the Courtland and Brown's Ferry road, in which Mrs. Swoope is allotted dower, subject to said dower, and are to have possession of the same at the end of the present year; and the said Betts and wife are to pay Sykes and wife the sum of $500, on the 1st January, 1871. The said Sykes and wife are to have the plantation near Courtland, between the Brown's Ferry and Lamb's Ferry roads, the house and lot in which Mrs. John M. Swoope now resides (being lots Nos. 293 and 294), subject to her right of dower, and all the other property, real, personal, mixed, and *choses* in action belonging to said estate; and the said A. J. and Emma Sykes also agree to pay all the debts of said estate, and hereby bind themselves to said E. C. and Virginia Betts that they will save them harmless against any and all liability for any and all debts owing by the estate of said John M. Swoope, and that they will themselves pay the same. And all proper instruments and conveyances are to be executed between the parties; and this instrument is to be recorded in the Probate Court of Lawrence county, Alabama, as a final settlement and distribution of said estate. Witness our hands," &c.

A demurrer was interposed to the original bill, which was overruled by the chancellor then presiding (Hon. S. K. Mc-
VOL. LXXXVII.

[Sykes v. Betts.]

SPADDEN); but, on appeal to this court, his decree was reversed—82 Ala. 378. Afterwards, the death of A. J. Sykes having been suggested, an amendment of the bill was filed in the name of Mrs. Sykes, as follows: "Your oratrix states, on information and belief, that the defendants deny that the lands allotted to said Virginia A. on said division are subject to a lien for the payment of said $500, with interest thereon, and assert and claim that the consideration of the aforesaid promise and obligation to pay said $500 was not solely the purchase-money of the lands, nor the excess in value of the lands allotted to the said Virginia A., over and above the value of the lands allotted to your oratrix on said division. Your oratrix avers that, on said division, and by the said agreement, she parted with, and transferred to the said Virginia A., only her undivided one-half interest in and to said lands, and that, in equity, your oratrix has a lien on such undivided one-half interest, for the payment of said sum of $500, with interest thereon. And your oratrix avers, that at the time of said agreement and division, there were no unpaid debts against the estate of said John M. Swoope, and no charge against his estate, nor was there any personal property of said estate, of any kind, subject to distribution, except some *choses* in action of no value, from which nothing has ever been realized; that the lands allotted to the said Virginia A., on the division aforesaid, exceeded in value, by more than $1,000, the lands allotted and assigned to your oratrix; and that the consideration of said promise and obligation to pay said sum of $500 was equalizing such division of the lands of their ancestor between said Virginia A. and your oratrix."

The chancellor sustained a demurrer to the bill as amended, and his decree here assigned as error.

R. C. BRICKELL, for appellant.—The amendment of the bill fully meets the objections raised on the former appeal, and shows that the $500 was only on account of the estimated difference in value between the two tracts of land, the personal property and the debts being of no value whatever. But it is submitted that, on the facts shown by the record, the former decision is wrong, in not recognizing the distinction between a vendor's lien, or grantor's lien, more properly called, and the security which the vendor carves out for himself, or retains, when he has not parted with the legal title. The vendor's lien, strictly speaking, is the mere creation of

[Sykes v. Betts.]

equity; it arises by operation of law, when he has parted with the legal title, and is founded on the equitable principle, that it is unconscientious for one man to get and keep the estate of another without paying for it. But, when the vendor retains the legal title in himself—executing only a bond for the title, or taking a mortgage if he has executed a conveyance—the rights of the parties are matter of contract; if binding on one, it is equally binding on the other, and either may compel a specific performance—that is, the purchaser may compel the execution of a conveyance, on payment of the purchase-money; and the vendor may subject the land to the payment of the purchase-money, and obtain a personal decree for any unpaid balance. This distinction is recognized by text-writers, and runs through many adjudicated cases.—3 Pomeroy's Equity, § 1260; 1 Jones on Mortgages, § 225; *Haley v. Burnett,* 5 Porter, 452; *Chapman v. Chunn,* 5 Ala. 397; *Relfe v. Relfe,* 34 Ala. 500; *Bankhead v. Owen,* 60 Ala. 460; *Gilman v. Brown,* 1 Mason, 221; *Teague v. Wade,* 59 Ala. 369; *Kelly v. Payne,* 18 Ala. 371; Pomeroy on Contracts, § 6; Waterman on Specific Performance, § 15; 66 N. C. 501; 80 N. C. 258; 16 N. J. Eq. 147; 6 Gray, 25. Here, the legal title was retained, and express provision was made for the execution of conveyances in the future; and it is not to be presumed that it was intended or contemplated that one should get the property of the other without paying the agreed price.

D. D. SHELBY, *contra,* cited and relied on the former decision in this case.—82 Ala. 378.

CLOPTON, J.—When this case was before the court at a former term, on appeal taken from a decree overruling a demurrer to the bill, we held that its averments were insufficient to bring the claim of complainant within the principle, on which rests the equitable doctrine of enforcing a vendor's lien for the unpaid purchase-money of land. The agreement between the parties was regarded in form a single contract, intended to make, without resort to administration, a full settlement and distribution of the estate of their intestate ancestor. The decision was rested on the ground, that the contract and the allegations of the bill left in doubt and uncertainty whether Mrs. Betts' promise to pay five hundred dollars was based solely on an agreed difference in the value of the lands, or whether some other consideration entered

[Sykes v. Betts.]

into it. It was said: "To come within the principle, the debt must be contracted in the purchase of real estate, and no other consideration must, in the slightest degree, enter into it. If it be uncertain, whether the debt sought to be collected rests alone for its consideration on the lands on which the bill seeks to fasten the lien, or whether it rests on something else, or on the lands and something else, then the doctrine can not be applied for most obvious reasons." 82 Ala. 378.

After the remandment of the case, the bill was amended, a demurrer again interposed, and sustained. The present appeal is taken from the decree sustaining that demurrer. The amendment substantially alleges, that Mrs. Sykes parted with, and transferred to Mrs. Betts, an undivided interest in lands only; that the decedent owed no debts, and there were no charges against his estate at the time of his death, nor was there any personal property subject to distribution, except some *choses* in action, which were valueless; that the lands allotted and assigned to Mrs. Betts exceeded in value, by more than one thousand dollars, the lands allotted and assigned to Mrs. Sykes; and that the consideration of the promise to pay the five hundred dollars was the equalization of the division of the lands.

Appellant insists that the principles announced in the opinion delivered on the former appeal, are only applicable to the lien of the vendor which equity creates after a conveyance is made, and not to the lien reserved by the contract, when the legal title is retained. The argument is, that there is a broad and plain distinction between the rights and interests of a vendor and vendee before and after conveyance. After conveyance, the lien of the vendor is a mere equitable charge, without any estate in the lands; and when no conveyance is made, the vendor retains the legal title, a more efficient security, of which he can not be divested, except by payment of the purchase-money, which the retention of the legal title was intended to secure. In other words, in the former case, the lien is a mere creation of equity; in the latter, a lien by contract. Our own decisions have recognized a marked distinction between the lien of a vendor after a conveyance, and the security carved out by the retention of the legal title, though each may be denominated a lien in the extended signification of the term. It has been repeatedly declared, that the essential incidents of a mortgage attached to a contract for the sale of lands, when by its

terms the vendor retains the legal title as security for the price—such as a bond conditioned to make titles on payment of the purchase-money—and that such security is not impaired by taking personal security.—*Chapman v. Chunn*, 5 Ala. 397; *Kelly v. Paine*, 18 Ala. 371. In such case, the remedy may be regarded reciprocal. Generally, the vendor may maintain a bill to enforce his security, whenever the vendee, if he had paid the purchase-money, could maintain a bill for specific performance.—*Hopper v. Hopper*, 6 N. J. Eq. 147.

It may be conceded, that whenever the vendor retains the legal title, the presumption is, that he retains it as security, unless such presumption is repelled by the terms and character of the contract, or by the circumstances. It is not conclusive. When, by the contract, no lien or security is carved out or reserved, either expressly or by implication, when it becomes a matter of presumption, whether or not the presumption arises before conveyance is made, depends on the same principles applicable after a conveyance is made. When there is a blending and commingling in the same note or contract of the aggregate price of real and personal property sold at the same time, and the agreed price of the real property can not be separated and definitely ascertained, by reference to either the writing, or extrinsic evidence, or both, the presumption of the retention of the equitable lien is rebutted. In *Stringfellow v. Ivie*, 73 Ala. 209, it is said: "When the considerations are blended and combined, and it is impossible, without resort to conjectural inquiries, to separate them, the presumption must be, that the vendor did not look to the lands for payment, but relied exclusively on the personal responsibility of the vendee." The same rule applies, when, from the contract, it appears that there has been a sale of real and personal property for a sum in gross, though no conveyance is made.

By the agreement between the parties, specified lands were allotted to Mrs. Betts, and she agreed to pay five hundred dollars, while Mrs. Sykes was allotted other specified lands, and all other property of the estate, "real, personal, mixed, and *choses* in action," and obligated herself to pay the debts. True, Mrs. Sykes transferred no personal property to Mrs. Betts, and there is not a blending of the aggregate price of real and personal property; but the principle is the same, whenever any consideration other than the purchase of lands enters into the debt, and no

*data* exist from which the particular price agreed to be paid for the land can be distinguished and ascertained. It is evident that the parties intended to make, and did make, a full settlement and division of the entire estate of their deceased father between themselves, the only heirs and distributees. The agreement purports to be a full settlement, division and distribution of the entire estate *in præsenti.* As appears from its face, the consideration of Mrs. Betts' promise to pay five hundred dollars is based on the estimated difference between the value of the portion of the estate allotted to her, and of the portion allotted to Mrs. Sykes, the latter reduced by the amount of the debts assumed to be paid; that is, it was estimated that five hundred dollars would equalize the benefits received and the burdens imposed upon the parties respectively. There is manifestly a blending of considerations, and the agreed value of the lands can not be separated and ascertained by reference to the contract. The presumption that the legal title was retained as security for the purchase-money of the lands, is repelled by the stipulations and character of the contract.

Neither do the extrinsic facts alleged in the amendment of the bill remove the objections to which the claim asserted by complainant is otherwise obnoxious. To effectuate this, it is essential that the price agreed to be paid for the lands should have been fixed and agreed on in the making of the contract, and the relation of vendor and vendee established as matter of separate negotiation.—*Alexander v. Hooks,* 84 Ala. 605; *Stringfellow v. Ivie, supra.* The amendment fails to aver that, at the time of making and consummating the agreement, it was understood and agreed that there were no debts or charges against the estate, or that the personal property was valueless, or that one thousand dollars was the difference in the value of the lands. It is consistent with the allegations of the amendment, that the parties at the time regarded the personal property as of some value, and it subsequently proved to be worthless; and they· may have believed that there were debts, and it was afterwards discovered there were none. The question is not, what were the facts as subsequently disclosed, but how did the parties consider and estimate the matters in making the settlement and division of the estate. Considering the frame of the bill, we regard the averment that the consideration of Mrs. Betts' promise was the equalizing the division of the lands, as the mere conclusion of the pleader from the facts alleged.

Affirmed.