# Hester v. Hunnicutt.

*Bill in Equity to enforce a Vendor's Lein.*

1. *Vendor's lien; when an equitable mortgage and not a vendor's lien.*— When upon the sale of land the vendee executes his note, for the purchase money, payable at a designated time, and the vendor executes to the vendee a bond for title, binding himself to convey the land to the vendee upon his payment of the note given by him, such a transaction creates, not a vendor's lien, but an equitable mortgage for the security of the specified debt, evidenced by the note, which can be foreclosed in a court of chancery. (*Alexander v. Hooks*, 84 Ala.

[Hester v. Hunnicutt.]

605, and *Sykes v. Betts*, 87 Ala. 537, in so far as they conflict with the principle here announced, are overruled.)

2. *Foreclosure of equitable mortgage; fact of note being for other than purchase money can not be shown in defense.*—On a bill filed by a vendor to foreclose an equitable mortgage on land, created by his execution of a bond for title, wherein he agreed to convey the land to the vendee upon the payment by the latter of a note given by him to the vendor, the vendee can not show, in partial defense of the bill, that a part of the indebtedness evidenced by the note was other than for the purchase money of the land ; the parties having expressly contracted to charge the land with the whole indebtedness as evidenced by the said note.

3. *Vendor and purchaser; damages for breach of warranty of title.*— Where, upon lands sold there was situated a water mill, which was propelled by water brought from a creek through a mill race erected, in part, on adjoining lands owned by third parties, the vendee can not recover from the vendor damages for a breach of warranty of title to the land purchased, because the mill race was built, in part, upon land which was not owned, at the time of sale, by the vendor, if it is shown that the vendee, after his voluntary abandonment of the use of the mill and race, incited the person in possession of land through which the race ran, but who was not shown to have title thereto, to claim, for the first time, the race, and to forbid the vendee's further use of it.

APPEAL from the Chancery Court of Franklin.

Heard before the Hon. THOMAS COBBS.

The present bill was filed on December 4, 1891, by the appellant, Wiley R. Hester, against the appellee, John F. Hunnicutt, for the purpose of enforcing a vendor's lien on a certain tract of land described in the bill, which, as was alleged in the bill, he had sold to the defendant on February 21, 1890. Upon the defendant's conveying to the complainant a certain tract of land which was owned by said defendant, and the execution to him of a note for the sum of $500, the complainant executed to the defendant his bond for title, agreeing therein to execute a warranty deed to the defendant upon his payment of the said note. It was alleged in the bill that said note had never been paid. Hence the present suit.

The defendant in his answer alleged that he was the owner of a certain tract of land valued at $1,200, and that the complainant owned another tract of land which, exclusive of its mineral rights, was valued at $1,400 ; that by agreement they exchanged said property, the defendant to pay the difference in the valuation of the

two tracts of land ; that some time prior to this transaction the defendant was indebted to Wilson Brothers & Co. in the sum of $300, and that by agreement with them and the defendant, Hester assumed to pay the three hundred dollars, and that thereupon the defendant executed to the said complainant the note for $500, which included·the $200, the difference in the valuation of the two tracts of land, and the $300 due said Wilson Bros. & Co. from him, which the said Hester had assumed ; and that it was for the enforcement of this note that that the present bill was filed. The defendant also set up as a defense to the said bill that the complainant did not own the mill race appurtenant to the mill on said land, and that without it the property was very much less valuable ; and the defendant by cross-bill sought to recoup damages for the breach of warranty of title to this part of the land, which had been conveyed to him by the complainant. The facts in reference to these matters are sufficiently stated in the opinion.

On the final submission of the cause, the chancellor granted the relief prayed for by the cross-bill, and allowed the defendant damages for the alleged breach of warranty on the part of the complainant, and further decreed that the complainant, was entitled to a lien for only the amount of the difference between the damages awarded the defendant on his cross-bill, and the note executed by him with interest thereon.

This decree is appealed from, and the same is here assigned as error.

KEY & HESTER, for appellant.—1. Where, under a contract of sale the vendor is to retain the legal title to the land until a note executed by the vendee is paid, such transaction creates a mortgage upon the land whether the note·was given wholly for the purchase money, or partly for the purchase money and partly for other personal obligations.—Pomeroy Eq., § 1260 ; 1 Jones on Mortgages, § 228 ; Stringfellow v. Ivie, 73 Ala. 209 ; Patton v. Beecher, 62 Ala. 579 ; Haley v. Bennett, 5 Porter 452 ; Chapman v. Chunn, 5 Ala. 397 ; Relfe v. Relfe, 34 Ala. 500 ; Bankhead v. Owen, 60 Ala. 460; Gilman v. Brown, 1 Mason 221 ; Teague v. Wade, 59 Ala. 369 ; Kelly v. Payne, 18 Ala. 371; Sykes v. Betts, 87 Ala. 537 ; Moses v. John-

*son*, 88 Ala. 517 ; *Chapman v. Lee*, 64 Ala. 483 ; *Bizzell v. Nix*, 60 Ala. 281.

2. The contract between the parties in the present case created a mortgage and not a vendor's lien, for the foreclosure of which mortgage the vendor could maintain the present bill.—1 Jones on Mortgages, § 225; *Haley v. Bennett*, 5 Porter, 452 ; *Chapman v. Chunn*, 5 Ala. 397 ; *Relfe v. Relfe*, 34 Ala. 500 ; *Bankhead v. Owen*, 60 Ala. 460 ; *Gilman v. Brown*, 1 Mason 221; *Teague v. Wade*, 59 Ala. 369 ; *Kelly v. Payne*, 18 Ala. 371; Pomeroy on Contracts, § 6 ; Waterman on Spec. Performance, § 15. This contract is a trust or a mortgage, and not a vendor's lien by implication or operation of law.—*Stringfellow v. Ivie*, 73 Ala. 214 ; *Patton v. Beecher*, 62 Ala. 579; *Hooper v. Sav. & Mem. R. R. Co.*, 69 Ala. 529.

3. The defendant is estopped from saying that complainant ought not to have the lands sold for the payment of the whole amount of the note, since, under the contract, the land was to stand as security for the payment of said note.—*Taylor v. A. & M. Asso.*, 68 Ala. 229; *Lindsay v. Cooper*, 94 Ala. 170; *Leinkauff v. Munton*, 76 Ala. 194; *Demopolis v. Webb*, 87 Ala. 659 ; *Robertson v. Bradford*, 73 Ala. 116 ; *Goodman v. Winter*, 64 Ala. 410; *Nunn v. Norris*, 58 Ala. 202; *Bland v. Bowie*, 53 Ala. 152; *Bell v. Craig*, 52 Ala. 215; *Wright v. Ware*, 50 Ala. 549; *Robinson v. Pebworth*, 71 Ala. 240.

4. The defendant can not defend against the payment of the purchase money unless there was fraud in the contract, or complainant is insolvent, so long as he remains in possession.—*Thompson v. Sheppard*, 85 Ala. 611; *Woodall v. Kelly*, 85 Ala. 368; *Magee v. McMillan*, 30 Ala. 420.

5. The defendant can not recover damages in this case for the supposed breach of warranty in the title.—*Kingsbury v. Milner*, 69 Ala. 502 ; *Hopper v. Lutkins*, 4 N. J. Eq. 149 ; *Bridgeport L. & I. Co. v. Amer. Fire &c. Co.*, 94 Ala. 592. The mill race that is on the land sold to James by complainant was not conveyed in a warranty deed, as the law clearly holds it to be a part of the mill, and not a part of the land it is on.—6 Amer. & Eng. Encyc. of Law, 140 ; *Keucken v. Voltz*, 110 Ill. 264; *Maud Beth Orphan's Home*, 1 Cen. Rep. (Pa.) 402 ; *Hills v. Miller*, 3 Paige N. Y. Ch. 254.

ALMON & BULLOCK, *contra*.—1. Sale and conveyance

by complainant to respondent of "mill race privileges," which he had previously conveyed to James, was a fraud on respondent, arming him with the right of set-off and recoupment whether he had been ousted or not.—16 Amer. Dec. 564; *Meeks v. Garner*, 93 Ala. 17; *Green v. Casey*, 70 Ala. 417; 4 Amer. Dec. 581. Such damages for a partial failure of title may be set-off or recouped.— *McConnell v. Dunlap*, 3 Am. Dec. 723; *Cook v. Grant*, 16 Amer. Dec. 564; *Tyler v. Young*, 35 Amer. Dec. 116; *Cook v. Rives*, 53 Amer. Dec. 89; *Mortlock v. Buller*, 10 Vesey 292.

2. An express warranty in a deed may be relied upon as a protection against all defects, known and unknown. *Trimble v. Turner*, 53 Amer. Dec. 92; *Jackson v. Ligon*, 3 Leigh. 161.

3. Artificial water privileges are not reserved by implication from the terms of a warranty deed absolute on its face.—*Stein v. Burden*, 29 Ala. 127; *Brakely v. Sharp*, 10 N. J. Eq. 207; *Johnson v. Jordan*, 2 Met. (Mass.) 240; *Burr v. Mills*, 21 Wend. 292; *Preble v. Reed*, 17 Me. 175; *Hayes v. Bowman*, 1 Rand. 420; *Hathorn v. Stinson*, 10 Me. 224; Washburn on Easements, 98.

HEAD, J.—The lien of a vendor who has conveyed the lands to the purchaser is a charge upon the lands sold, which a court of equity will raise and enforce for the security and payment of the purchase money. It rests upon the doctrine that it is inequitable for a purchaser to retain the lands of the vendor without paying the purchase price. The lien will not be raised except for the purchase money. In a case of that character, it is competent for the vendee to show by parol that a promissory note, reciting that it was given for the purchase money of the land, was in fact given, in part, for such purchase money, and, in part, for another indebtedness.—*Stringfellow v. Ivie*, 73 Ala. 209. But such is not the nature of the present case. There was no conveyance of the land by Hester to Hunnicutt. The equitable lien of the vendor did not arise. The parties, by express contract, created the security which it was designed Hester, the vendor, should retain, which was evidenced by the writings they executed. Hunnicutt executed to Hester his promissory note for $500, payable at a designated time. Hester, in turn, executed to Hunni-

cutt his bond, by which he bound himself to convey the
land to Hunnicutt upon payment of the note. As we
have many times decided, such a transaction is, essen-
tially, the creation of a mortgage for the security of the
specified debt. See the cases collated in *Bankhead v.
Owen*, 60 Ala. 467. In that case, Chief Justice Brickell
drew the distinction between the lien which a court of
equity raises for the security of the purchase money of
land which has been sold and conveyed to the vendee,
and the security carved out by the parties themselves in
cases like the present, in the following language : "The
equitable lien of the vendor has not, in the course of our
decisions been carefully distinguished, at all times, from
the security the vendor carves out for himself by retain-
ing in himself the legal title until the payment of the
purchase money. The two are often spoken of as if
they were of the same character and operation ; and yet
they have no common element, except that each is a
security for a debt—the one by the contract of the parties,
the other by operation of law and under a decree of a
court of equity. There can be no just and proper dis-
tinction drawn between a mortgage to secure the pay-
ment of the purchase money, executed contemporane-
ously with the conveyance of the land, and a reservation
of the legal estate as a security for the payment."
Citing the authorities. Later decisions of this court
have recognized the doctrine. The contract before us,
then, is, that the lands are charged by virtue of its
terms, with the payment of the specified note for $500.
It is the same as if Hester had conveyed the lands to
Hunnicutt and the latter had executed a mortgage to
the former to secure a note for $500 given at the same
time. It is true, if there had been a partial or total
want or failure of consideration of the note, that defense
would be open to Hunnicutt, on bill to enforce the *quasi*
mortgage ; but if there was not such—if the whole
amount of the note is owing, based upon a valuable con-
sideration—it is not permissible to show, in partial de-
fense of the bill, that a part of it was for other than
purchase money of the land. As we have said, the par-
ties expressly contracted to charge the land with the
whole sum, and by their contract they must stand. We
think the evidence satisfactorily shows that Hunnicutt
assumed the Wilson debt, and that he, therefore, owed
the full amount of the $500, mentioned in the note.

We are aware that this court, in *Alexander v. Hooks*, 84 Ala. 605, applied the rule of *Stringfellow v. Ivie*, 73 Ala. 209, *supra*, to a case like the present, and in *Sykes v. Betts*, 87 Ala. 537, we gave expression to similar views; but in doing so, there was a failure to observe the clearly established distinction between the vendor's lien proper, which is purely the grace and creation of a court of equity, based upon that principle of equity that it is wrong for a person to retain the lands of another without paying the purchase price, and an express contract entered into between the parties by the terms of which they charge the land with a specified debt. In the latter case, the express condition of the bond for title is, that the obligor will make title upon payment of the specified note. It is not proper to treat it as a vendor's lien, based upon the equitable principle above stated, and it can not be done without setting aside the express contract of the parties. The cases of *Alexander v. Hooks*, 84 Ala. 605, and *Sykes v. Betts*, 87 Ala. 537, *supra*, in so far as they conflict with the views herein expressed, are overruled.

The complainant is entitled to $500, and the interest thereon—the amount of the note, secured by the bond for title—as a charge upon the lands. Against this, Hunnicutt seeks, by cross bill, to recoup damages for breach of warranty of title to a part of the land sold him consisting of a certain mill race over lands alleged to be in the occupancy of, and belonging to, the James heirs, who have ousted and deprived him of the use and enjoyment of the race. It is alleged that Hester had no title, and can make none, to this race; in consequence of which he, Hunnicutt, is materially damaged. The answer puts these allegations in issue and denies the right to the relief claimed by the cross bill, in this respect. We gather from the case that there was a water mill situated on the land purchased by Hunnicutt from Hester, and that the land was principally valuable for the purposes of that mill. The mill had been there and in operation for more than forty years. The water by which it was propelled flowed from a creek, through a race erected, in part, on and through adjacent lands, which, at the time of the sale to Hunnicutt, belonged, in part, to the heirs of Isaac James and, in part, to one McNatt. Hester had, for many years, owned the lands sold to Hunni-

cutt, with the mill thereon ; and had owned the James
land with a portion of the mill race thereon.   In 1871
he sold the latter (80 acres) to Isaac James, and, on
February 15, 1874, executed to him a deed thereto, not
mentioning the mill race located thereon.   He, however,
thereafter, continued to use the race for the operation of
the mill, as it had been used since the mill was built,
many years before, without objection or molestation on
the part of James, except that in 1873, after he had sold
to James, he changed the location of the race, on the
land so sold, moving it, at the farthest point, about fifty
yards from its original line.   The change was really a
benefit to the lands.   The testimony of Hester, if it were
admissible, shows that this change was made with the
express consent of James (now deceased) who said he
preferred to have it in its changed location.   This testi-
mony cannot be considered, however, since he would
not be permitted to testify to the facts, in support of the
title of Hunnicutt, in any litigation the latter might
have with the heirs of James respecting the title.   It
does appear, however, that Hester continued to use the
race, as he had always done, down to his sale to Hunni-
cutt, and that Hunnicutt used it, in the same way, for
twelve months after his purchase, without objection or
hindrance from any source, and began to operate it the
second season, but voluntarily suspended operations, evi-
dently because it proved unprofitable.   It appears that
after this time, Hunnicutt called upon Mrs. James (the
widow of Isaac James, who had died in 1888) to know
if Mr. Hester had a right to the race through her land.
Up to this point neither she, nor any one else, had ever
raised an objection to his use of the race ; but she did
then object, and forbade Hunnicutt to further use it.   As
to his dispossession of the race, Hunnicutt testifies as
follows :   "I have been deprived of the race on the land
I got from Hester by parties filling the race and cutting
trees in it.   The dam torn out and no water could come
through the race, and I was deprived of the use of the
mill.   The dam torn away was on McNatt's land and most
of the race that was filled up, and part of it on the land
of Mrs. James.   McNatt tore the dam away and filled
up that part of the race which was on his land and
which was a part of the race I bought from Hester.   I
don't know of my own knowledge who filled up that part

of the race which was on the James land. It was done without my consent." Mrs. James testified: "I do not know whether any of the race on the James land was filled up or not. I am told that it is. I did not authorize it done." There is no evidence that any of the James heirs made any objection to the use of the race by Hunnicutt, or had anything to do with filling it up. We can take no notice of the supposed right of McNatt to a part of the race, since it is not mentioned in the pleadings, and there is no evidence of want of title in Hester to the same. The case made by the cross bill is that the race belonged to the James heirs, or Mrs. James, and to that we must be confined. The evidence establishes to our entire satisfaction that Hunnicutt voluntarily abandoned the use of the mill and race; and after such abandonment, himself, agitated the question of his title, and, by his own action, caused Mrs. James to interpose objections she would otherwise have never thought of making. He called upon her and raised a question of Hester's title, and this incited her to claim the race, for the first time, and to forbid his further use of it; and this is all there is of his alleged eviction. Although this race had been appurtenant to his land, bought of Hester, for 43 years, and during all that time had been constantly maintained and used, in the operation of the mill, without let or hindrance from any source, upon the mere objection of Mrs. James, the widow, who is not shown to have any title to the land, brought about by his own conduct, he placidly submits; concedes away his rights and sues Hester for damages for breach of his covenant of warranty. We think, under these facts, there has been no real eviction, and that Hunnicutt is in no position to claim damages, even if it were conceded that there was a failure of title to the race—a concession which we must not be understood, by any means, to make. We are of opinion the chancellor erred in allowing damages, and his decree is accordingly reversed, and a decree will be here rendered granting the relief prayed for by the original bill and denying the relief prayed by the cross bill. The appellee will pay the costs of appeal.

Reversed and rendered.