# Loyd v. Guthrie.

*Bill in Equity to enforce an Equitable Lien.*

1. *Equitable lien; when not created by provisions of promissory note; mechanic's lien.*—Where one having a mechanic's lien upon a building takes a note from a debtor, payable after the time limited by statute for the institution of proceedings to enforce such lien, and the note, after reciting that it was given for money, material and labor furnished by the payee in the building of a store, then provides that "a mechanic's lien is held on this building to secure the payment of this note," such statement is not sufficient to create an equitable lien or mortgage; but it will be regarded as necessary in the note, to prevent the existing lien from being waived by the lien holder taking a note payable after the expiration of the time for the institution of proceedings to enforce such lien. (TYSON, J., *dissenting*.)

APPEAL from the Chancery Court of Morgan.
Heard before the Hon. WILLIAM H. SIMPSON.
The bill in this case was filed on August 5, 1899, by the appellant, N. B. Loyd, against the appellees, W. P. Guthrie, Edna Turney, Lucille Turney Clay, Maggie Turney Clay, Ella Turney Willis, and Amos Turney and J. Frank Clay, executors of the last will and testament of Daniel Turney. Edna Turney, Lucille Turney Clay, Maggie Turney Clay and Ella Turney Willis are the only heirs at law of said Daniel Turney. It was averred in the bill that on March 13, 1888, the defendant, W. P. Guthrie, was indebted to the complainant in

the sum of $1,000, and to secure the payment of the same, he executed to complainant, on said date, the following promissory note, which was signed by the said Guthrie: "Decatur, Ala., March 13, 1888. Twelve months after date, I promise to pay to N. B. Loyd or order, the sum of one thousand dollars, bearing 8 per cent. interest from date until paid, for value received, it being money, material and labor furnished in the building of my store room on Moulton street, block 1, lot No. 24, of New Decatur, Alabama, and a mechanic's lien is held on said building to secure the payment of this note." It was then averred in the bill that in and by the terms of said promissory note, W. P. Guthrie gave to complainant "an equitable lien or mortgage" upon the lot described, together with the building thereon. A description different from that given in the note was set forth in the bill as a correct description of the property which it was averred the parties intended to charge with the lien. After giving a correct description it was then averred in the bill that "the said W. P. Guthrie did not at the time of the execution of said note and does not now own any other lot on Moulton street in New Decatur, Alabama,  *  *  *, and that at the time of the execution of said note it was clearly understood between the orator and said W. P. Guthrie that orator was to have an equitable lien or mortgage upon said lot and the building thereon as security for the payment of said note." It was then alleged in the bill that subsequent to the execution of said note, Guthrie had executed a usurious mortgage to Daniel Turney, who was deceased at the time of the filing of the bill; that the defendants, Amos Turney and J. Frank Clay, were his executors, and that all the other defendants except Guthrie claimed some interest in the property.

The prayer of the bill was that the description of the property as found in the note be reformed, so as to properly describe the property which was intended by the parties to be charged, and that a lien be established in favor of the complainant on said lot and the buildings thereon for the amount due complainant, and that

this lien be declared superior to the lien created by the mortgage given by Guthrie to said Turney, deceased, and that said lot be condemned to sale for the payment of the amount ascertained to be due the complainant.

All of the defendants, except W. P. Guthrie and Edna Turney jointly and severally moved to dismiss the bill for the want of equity.

Upon the submission of this motion to dismiss, the chancellor sustained it and rendered a decree dismissing the bill for the want of equity. From this decree the complainant appeals, and asssign the rendition thereof as error.

HARRIS & EYSTER, for appellant.—A contract expressed in a promissory note set out in a bill, creates a lien independent of any statutory provisions conferring liens on mechanics' and material men,—or contract lien, which can be enforced in a court of equity. Contracts of this character are to be read in the light of the circumstances surrounding the parties at the time it was made; and the note itself shows in concise terms that the defendant Guthrie was building a store house on a lot of land he owned in New Decatur, Alabama, and that the consideration for which the note was given was for money, material and labor furnished in building a store house on said lot.—*Newlin v. McAfee*, 64 Ala. 357; *Donald & Co. v. Hewitt*, 33 Ala. 546; Jones on Liens, §§ 27, 28, 29, 30, *et seq; Peay v. Field*, 30 Ark. 600.

E. W. GODBEY, *contra.*—The statement at the foot of the note was no contract for a lien upon property. But merely a declaration as to the effect of the note. *Roberts v. Jack*, 25 Amer. Rep. 584.

The mere result of the pre-existing facts from which the statute had already fastened a mechanics' lien upon the property, and the further recital that said lien was a mechanics' lien could not utterly destroy that statutory lien, and the statutory remedies for its enforcement, and substitute, instead, a wholly different lien,

sanctioned only at common law, and enforcible only in a court of chancery upon merely general principles of equity.

"It appears from the instrument executed by Guthrie in which he acknowledged the indebtedness that he declared a recognition of a lien given by law, but as the law gave no lien," (or the same is barred) "the statement can avail nothing. It is no contract for a lien."—*Peay v. Field,* 30 Ark. 600.

TYSON, J.—In *Donald v. Hewitt,* 33 Ala. 534, the contract provided that "Schnetz & Hewitt are to retain a special lien on said boat and engine, until the notes are paid." It was contended that Schnetz & Hewitt had no lien by virtue of the contract. It was insisted in that case, as here, that the parties to the contract in providing that they "are to retain a special lien" contemplated no other than the statutory lien which they had under the statutes of Kentucky. But the court said: "If this be so, the parties have done a vain and useless thing, in bringing the subject of a lien into their contract. The language employed is appropriate to create a lien, and to provide for its continuance. If the parties intended that the lien so held should exist by virtue of the statute of Kentucky, and not of the contract, they have not said so; nor have they said that which authorizes us to infer it. We give effect to the words of the contract, and allow a motive to the parties in the use of them, when we understand them as creating a lien; one to exist by virtue of, and to have effect determinable by, the contract." The court, proceeding, held that Schnetz & Hewitt had a lien by virtue of their contract, which could be enforced in equity against the owner of the boat and all other persons except innocent purchasers for value. The legal effect of the language of the contract quoted above and which the court held created an equitable mortgage, cannot be differentiated upon principle from that employed in the contract in the case under consideration. Here, after reciting the consideration of the note to be for money, material and labor furnished by complainant in the build-

ing of a store room on a designated lot, this language is employed: "And a mechanic's lien is held on this building to secure the payment of this note." If we substitute "special" for "mechanic's" and "retain" for "held" the language of the two contracts would be substantially the same. Does the slight difference in verbiage which confessedly is quite shadowy, so materially differentiate the two as to justify the conclusion in the one, that it created an equitable mortgage, and in the other that there was no intention to create a charge or trust upon the building? We think not. To so hold, would be to give effect to a shadow and not substance; resulting in the defeat of the intention of the parties as expressed in the note and in rendering the provision in it under consideration inefficacious, or to nullify it. In such case, it is the duty of the court to adopt that construction which will carry it into effect, and to this end, if necessary, the word "mechanic's" would be construed as descriptive of the payee named in the instrument rather than the lien created by it; or as was said by Lord MANSFIELD in *Pugh v. Leeds,* Cowp. 714, "the parties necessarily understood and used the language in that sense which made their deed effectual." A mechanic's lien is purely of statutory origin. "Its character, operation and extent must be ascertained by the terms of the statute creating and defining it. While every lien of this kind has a contract as its foundation, it is created rather by the law, than by the contract of the parties, is analogous to the vendor's lien for the purchase-money of land, and is based on a like reason," etc.—*Osborne v. Johnson Wall Paper Co.*, 99 Ala. 309; *Wadsworth v. Hodge,* 88 Ala. 500. "The mere fact that work and labor are performed and materials furnished for the erection or repair of buildings, or for the construction of other improvements, will not give rise to the lien. The work and labor may be done, and the materials furnished on the personal credit of the party contracting for them, and this is often true, and all that is intended. By the express words of the statute, the lien can come into existence only upon a compliance with its provisions. The first step which must be taken to create it, is the filing in the office of the judge of pro-

bate of the county in which the property to be charged
is situate, a just and true account of the demand, after
all just credits have been given, which must be verified
by the oath of the claimant," etc.—*Chandler v. Hanna,*
73 Ala. 393. In short, "its creation depends upon a
compliance, in all matters of substance, with the provis-
ions of the statute to which it owes its existence."—*Long
v. Pocahontas Coal Co.,* 117 Ala. 587. Being statutory
and existing only by operation of law arising out of the
relation of the parties, upon a compliance with the
terms of the statute, it can no more be raised by con-
tract than a landlord's or vendor's lien.—*McDonald v.
Elyton Land Co.,* 78 Ala. 382; *Bankhead v. Owen,* 60
Ala. 466; *Hester v. Hunnicutt,* 104 Ala. 282; 3 Brick.
Dig. 613, § 47; *Scheerer v. Agee,* 106 Ala. 139; *Hamil-
ton v. Maas & Bro.,* 77 Ala. 283; *Collins v. Whigham,*
58 Ala. 438; *Tucker v. Adams,* 52 Ala. 254. In *Hall v.
M. & M. R'y. Co.,* 58 Ala. 10, the contract provided for
a retention of a vendor's lien; this court held that it
created an equitable mortgage, a security for the debt
due the vendor and so enforced it. In *Kyle v. Bellin-
ger,* 79 Ala. 516, the bill was for the enforcement of a
vendor's lien, while the court held that the complainant
had no such lien, it also held that he had a lien created
by the contract between the parties which he could en-
force as an equitable mortgage. See also *Smith v.
Hiles-Carver Co.,* 107 Ala. 272. "In such cases, the form
or language of the instrument is not material, except
as an index of the intention of the parties. If it was
intended as a security for a valid debt, and this is de-
ducible from the instrument itself, it must be construed
to be an equitable mortgage."—*Butts v. Broughton,* 72
Ala. 298; *Jackson v. Rutherford,* 73 Ala. 157; *Wood v.
Holley Mfg. Co.,* 100 Ala. 346. See also *Ross v. Perry,*
105 Ala. 533; *Newlin v. McAfee,* 64 Ala. 357; *Kirksey
v. Means,* 42 Ala. 426; *Whiting v. Eichelberger,* 16 Ia.
422; *Blackburn v. Tweedie,* 60 Mo. 505; *Chadwick v.
Clapp,* 69 Ill. 119; *Peckham v. Hadlock,* 36 Ill. 38; *Gil-
son v. Gilson,* 2 Allen, 115.

The averment of ownership by Guthrie is sufficient
to withstand the attack made by the motion to dismiss

the bill. While it is not averred in precise terms, it is inferentially averred and the defect in this respect is curable by amendment if advantage be taken of it by demurrer.

The note sufficiently designates the property upon which the lien is created and it is not void on that account. *Id certum est quod certum reddi potest.*

The decree dismissing the bill for want of equity is reversed and a decree will be here rendered overruling the motion.

Reversed and rendered.

McCLELLAN, C. J., and DOWDELL, J., *dissenting.*

*On Application for Rehearing.*

The Justices of this court, excepting Judge TYSON, are now of opinion that the decree below should be affirmed. We interpret the references in the note to the consideration for which it is given and to a "mechanic's lien" as a mere recognition of a then status, the existence at that time of a mechanic's lien in favor of the payee, and not as the *giving* or creation or attempted giving or creation of any lien whatever. From the standpoint of the parties there was a necessity for such express recognition of the mechanic's lien to prevent its being waived by the lien-holder taking a note for the amount secured by it payable at twelve months, beyond the time limited by statute for the institution of proceedings to enforce it; and the language employed in the paper is entirely apt to this end, and wholly inapt to the *creation* of a lien of any sort—the conferring of a lien where none existed at the time, potentially or otherwise. Upon these considerations the decree of the chancery court will be affirmed.

Affirmed.